UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ECLIPSE GROUP LLP, a California limited-liability partnership,<br><br>                          Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, et al.,<br><br>                          Defendants. | Case No.: 15-CV-1411-JLS (BLM)<br><br>**ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>(ECF Nos. 157, 169) |

Presently before the Court are a convoluted set of cross-motions for summary judgment. The first Motion for Summary Judgment ("MSJ") is filed by Intervenor Stephen Lobbin ("Intervenor"), against Defendants Target Corporation ("Target") and Kmart Corporation ("Kmart") (collectively, "Defendants"), ("Intervenor MSJ," ECF No. 157). Plaintiff the Eclipse Group LLP ("Eclipse") joined Intervenor's MSJ. (ECF No. 158.) Defendants then requested leave to file one document which would suffice as their Response to Intervenor's MSJ and their own cross-MSJ. The Court granted the Motion and Defendants filed a cross-MSJ, ("Def. MSJ," ECF No. 169). Defendants' MSJ moves for summary judgment both on Plaintiff and on Intervenor's complaints. Intervenor filed a Reply in Support of his MSJ, which also served as a Response to Defendants' MSJ, ("Intervenor Resp.," ECF No. 177), and Defendants filed a Reply in Support of their MSJ, ("Def. Reply," ECF No. 181).

The Court requested supplemental briefing from the Parties, (ECF No. 182), and the

Parties both complied, ("Def. Supp.," ECF No. 184; "Pl. Supp.," ECF No. 186; "Def. Supp. Resp.," ECF No. 188). The Court held a hearing on May 10, 2018. After considering all briefing and oral argument, the Court rules as follows.

## BACKGROUND

In 2015, Eclipse filed a Complaint for breach of quasi-contract, quantum meruit, and unjust enrichment against Defendants and others, ("FAC," First Amended Complaint, ECF No. 50). The case arises out of an attorney fee dispute. In 2012, a company called Aquawood, LLC retained Eclipse to represent Aquawood and its retailers, one of which was Target, in in *Aquawood LLC v. Worldslide, LLC*, and related cases ("*Worldslide*"). (FAC ¶¶ 8–9.) Aquawood is an independent sales representative of Manley Toys, Ltd., d/b/a ToyQuest ("Manley" or "ToyQuest"). The plaintiff in the *Worldslide* case alleged infringement of its patents of toy waterslides that were manufactured by Manley and marketed and sold to the retailers through Aquawood. Manley also retained Eclipse to represent it and its retailers, including Kmart, in this matter and other related matters, one being *Aviva Sports, Inc. v. Menard, Inc*. (*Id.* ¶ 13.) Eclipse also represented Target in *Adams v. Target Corporation,* a class action suit. (*Id.* ¶ 18.) Manley's retainer of an attorney to defend its retailers was due to an obligation to defend and indemnify its retailers pursuant to an indemnity agreement. (Def. MSJ 9; ECF No. 183-2, at 18–43 (vendor agreements between Manley and Defendants which include indemnity provisions).)[1] In its Complaint, Eclipse argues it was not paid amounts on its invoices for services rendered to each Defendant in connection with the matters. (FAC ¶ 32.)

After some time, the Court allowed Intervenor Mr. Lobbin to intervene in the case. (ECF No. 57). Intervenor filed a Complaint against Defendants, alleging he worked as a contract attorney for Eclipse and Eclipse agreed to pay him 60% of attorney fee revenues collected from Intervenor's clients. (ECF No. 58, ¶ 8.) Two of the cases Intervenor was retained to work on were *Aviva* and *Adams*. (*Id.* ¶¶ 15–16.) Intervenor alleges he has not

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

been paid for his work. (*Id.*) Intervenor's Complaint alleges causes of action against Defendants for breach of quasi-contract and quantum meruit.

In sum, this case involves a triangular relationship, with three groups of parties: Vendors, Retailers, and Plaintiffs. (Def. MSJ 8.) Defendants (i.e., Retailers) contracted to purchase toys from the Vendors (i.e., Manley Toys and others). Plaintiffs were hired by the Vendors to represent the Vendors and the Retailers who sold the toys (i.e, Defendants). Defendants argue Vendors were obligated to pay Plaintiffs' attorney fees for, and on behalf of, Defendants. (*Id.* at 9.) Vendors did not do so, thus, Plaintiffs sued Defendants.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

In his MSJ, Intervenor moves for summary judgment against Defendants for his claims of breach of quasi-contract and liability for a quantum meruit recovery. (Intervenor MSJ 2.) Defendants disagree, arguing and that Plaintiffs'[2] claims are barred for various reasons, and that Intervenor has no standing to bring his motion. Defendants request the Court instead enter judgment in favor of Defendants on the asserted causes of action. (Def. MSJ 36.)

**I.  Quasi-Contract and Quantum Meruit**

   ***A. Legal Standard***

"[A] quantum meruit claim . . . is a quasi-contract claim for the reasonable value of services rendered." *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 909 (Ct. App. 2008); *see also In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the

---

[2] Because Plaintiff Eclipse joined in Intervenor's MSJ, Defendants refer to Intervenor and Eclipse as "Plaintiffs" throughout their brief. Any reference herein to "Plaintiffs" refers to Intervenor and Eclipse.

defendant.").

"The elements of a claim based on quantum meruit are: '(1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are unpaid.'" *DPR Const. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1130 (S.D. Cal. 2016) (quoting *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000)). Plaintiffs bring claims for both quasi-contract and quanrum meruit; the causes of action will be analyzed as one because quantum meruit is a subset of quasi-contract.[2]

All Parties agree that Defendants received legal services from Intervenor and Plaintiff and thus "benefitted." All Parties agree that Defendants have not paid Plaintiffs. And, as the Court held in its prior order, "[a]ll parties seem to agree that the plan was for Manley to pay Plaintiff to represent Defendants." (ECF No. 48.) The issue then becomes, if Manley does not pay, must Defendants pay? Both Parties present arguments why the Court should grant summary judgment in their favor.[3] The Court will address the arguments in turn.

/ / /

---

[2] As to Eclipse's unjust enrichment claim, as the Court noted in its prior order:
> Under California law "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). However, as the Ninth Circuit concluded when faced with the same argument in *Astiana*, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2014)).

(ECF No. 48, at 17–18). The Court again interprets Plaintiff's unjust enrichment "as a duplicative statement of its quasi-contract claim." (*Id.* at 18.)

[3] One of Defendant's arguments is that Intervenor has no standing to bring his own complaint because he is a partner at Eclipse. (Def. MSJ 30.) Defendants claim Intervenor states he was an "independent contractor" but was really acting as an agent for Eclipse in supplying legal services to Defendants. (*Id.*) If the Court were to conclude that Intervenor has no standing, it would still need to evaluate Eclipse's Complaint, as Defendants move for summary judgment on both Intervenor and Eclipse's Complaint. The Court therefore does not evaluate the standing argument here, except to note that Intervenor argues he is not a partner, and that Defendants hired him first and Eclipse second; the two were "always independent of each other." (Intervenor Resp. 7–8.)

### B. Whether Intervenor's Causes of Action are Barred by a Contract

Defendants argue recovery under quantum meruit is barred because of an express contract. (Def. MSJ 16.) "When parties have an actual contract covering a subject, a court cannot—not even under the guise of equity jurisprudence—substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (Ct. App. 1996); *see also Wal–Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613, (Ct. App. 1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.").

Here, three things are certain. First, there is a contract between Eclipse and Vendors. (*See, e.g.*, ECF No. 169-2, at 19.) The agreement with ToyQuest indicates Eclipse would represent ToyQuest in connection with the *Aquawood* patent litigation and related actions against certain ToyQuest retailers, including Target. (*Id*.) ToyQuest agreed to pay fees and all reasonable costs in connection with Eclipse's representation. (*Id.* at 20.) The letter does not specify that ToyQuest is indemnifying Defendants, nor whether Defendants are or are not responsible for any fees. Eclipse also entered into a similar agreement with Manley for the *Aviva* litigation, which indicates Eclipse will represent Manley and its customer co-defendants, including Kmart. (ECF No. 169-2, at 267.)

Second, there is an indemnity agreement between Vendors and Defendants. (ECF No. 183-2, at 18–43 (vendor agreements between Manley and Defendants which include indemnity provisions).) And third, there is <u>no</u> written agreement between Plaintiffs and Defendants. (Def. MSJ 9.) Defendants admit "there are no engagement letters, no written informed consents, and no conflict waivers" from Defendants. (*Id.* at 10.) Defendants state this is because Eclipse had entered into a contract with Vendors, which specified Vendors would pay for the litigation, and Defendants refused to enter into a contract with Plaintiffs as well. (*Id.*)

While there is certainly a contract regarding payment by Vendors, the contract by no means specifies that Defendants will not pay any fees, nor does it specify that

Defendants are obligated to pay the fees if Vendors fail to do so. Therefore, the Court again reaches the issue it reached in its prior order: while it is true Plaintiffs believed Vendors were obligated to pay its fees, does this limit Plaintiffs' ability to recover from Defendants if Vendors do not pay the fees? (ECF No. 49, at 19.) This answer cannot be found in the contract. Therefore, there is not a contract between the Parties (i.e, Plaintiff/Intervenor and Defendants) on this issue that would preclude a claim for quasi-contract.

### C. Third Party Beneficiaries

Defendants next argue "as third-party beneficiaries" they are entitled to enforce the Engagement Agreements between Vendors and Plaintiffs. (Def. MSJ 18.) Plaintiffs disagree that Defendants are third-party beneficiaries. (Intervenor MSJ 12.)

A third party beneficiary may enforce a contract made expressly for his or her benefit. Cal. Civ. Code, § 1559; *Murphy v. Allstate Ins. Co.*, 553 P.2d 584 (Cal. 1976). The intent of the contracting parties to benefit expressly that third party must appear from the terms of the contract. *Kirst v. Silna*, 103 Cal. App. 3d 759, 763 (Ct. App. 1980). By judicial construction, the term "expressly" in Civil Code section 1559 has come to mean merely the negative of "incidentally." *Shurpin v. Elmhirst*, 148 Cal. App. 3d 94, 103 (Ct. App. 1983). In other words, Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by it. *Dateline Builders, Inc. v. City of Santa Rosa*, 146 Cal. App. 3d 520, 526 (Ct. App. 1983). A third party may enforce a contract if it can be shown that he or she is a member of the class for whose express benefit the contract was made. *Kirst*, 103 Cal. App. 3d at 763.

The Court agrees Target is a third party beneficiary to the agreement between Vendors and Plaintiffs. Eclipse's Engagement Agreement with ToyQuest states the purpose of the letter agreement is to confirm the terms under which Eclipse will undertake to represent ToyQuest as counsel in connection with the *Aquawood* patent litigation "and related actions filed by Wordslide, LLC against various of ToyQuest's retailers including . . . Target." (ECF No. 169-2, at 19.) The contract was drafted, in part, expressly for

Target's benefit. The contract between Manley and Eclipse regarding the *Aviva* litigation is similar, and was drafted, in part, expressly for Kmart's benefit. (ECF No. 169-2, at 267.)

But, the Court notes again that the contracts do not specify whether or not Defendants are obligated to pay the fees if Vendors fail to pay. The ability to enforce the contracts therefore does no good because the Parties can agree Vendors have refused to pay pursuant to the contract, and the contracts do not elaborate as to what occurs in this situation.

### *D. Whether Plaintiffs are Estopped*

Defendants argue Plaintiffs' claims are barred by estoppel due to Plaintiffs' conduct. (Def. MSJ 18.) Intervenor himself notes he spoke to both Defendants about his "understanding that Manley/Toyquest would pay the attorney fees and costs [Defendants] would incur in [his] representation, pursuant to a written and signed indemnification agreement." ("Lobbin Decl.," ECF No. 157-2, ¶¶ 4, 8, 11.) And Intervenor stated in his deposition that Vendors paid for the litigation, and the indemnity agreement "means [Vendors] are paying on [Defendants'] behalf." (Def. MSJ 9 (citing Exhibit 4).) Indeed, Intervenor has made it clear he knew the Vendors would be paying his attorney fees. Certainly, if he were arguing today that there was no indemnity agreement, he would be estopped. But, he is arguing that even though there is an indemnity agreement, if the primary payer fails to pay, the secondary payer is liable. At no point did he tell Defendants that he would not claim them as secondarily liable if Vendors failed to pay. Thus, Plaintiffs are not estopped from claiming Defendants are liable for the fees.

### *E. Whether Summary Judgment is Appropriate on Quantum Meruit / Quasi-Contract*

A party who expends funds and performs services at the request of another, "under the reasonable belief that requesting party will compensate him for such services" may recover in quantum meruit "although the expenditures and services did not directly benefit property owned by requesting party." *Earhart v. William Low Co.*, 600 P.2d 1344, 1345 (Cal. 1979). "To recover in quantum meruit, a party need not prove the existence of a

contract, but it must show the circumstances were such that the services were rendered under some understanding or expectation of both parties that compensation therefor was to be made. The burden is on the person making the quantum meruit claim to show the value of his or her services and that they were rendered at the request of the person to be charged." *Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore*, 162 Cal. App. 4th 1331, 1344 (Ct. App. 2008) (internal citations and quotations omitted). The theory of quasi-contractual recovery is that one party has accepted and retained a benefit "with full appreciation of the facts, under circumstances making it inequitable for him to retain the benefit without payment of its reasonable value." *Major-Blakeney Corp. v. Jenkins*, 263 P.2d 655, 664 (Cal. 1953).

Defendants argue "under no circumstances would [they] have agreed to the initial or continued representation by Plaintiffs if there were any doubt about Plaintiffs' agreement to look only to the Vendors for payment of Plaintiffs' fees and costs incurred on their behalf." (Def. MSJ 20.) And Intervenor argues, "[k]nowing [Vendor's] well-worn reputation for not paying attorneys, [he] would never have agreed to these representations if [he] could not preserve [] non-contract claims and remedies against the represented parties—i.e., Defendants—in the situation we are in now." (Intervenor MSJ 8.)

Therefore, the Court is faced with a true issue of material fact: the issue of the understanding and/or expectation of Defendants and Plaintiffs at the beginning of and throughout this representation. Was Plaintiffs' belief that they could recover under non-contract claims against Defendants reasonable? Did both Parties enter into this situation with "full appreciation" of the facts? This issue of material fact precludes summary judgment for Plaintiffs who seek recovery under quasi-contract/quantum meruit/unjust enrichment. The Court **DENIES** Plaintiffs' MSJ and proceeds to analyze the defenses asserted in Defendants' MSJ.

## II.     Ethical Violations

Defendants ask the Court to find that Plaintiffs have entered into this lawsuit with unclean hands due to Plaintiffs' ethical violations and this precludes Plaintiffs from

recovery. (Def. MSJ 26.)  Plaintiffs first argue Defendants have waived this defense. (Intervenor MSJ 11.)

### A. Waiver

Defendants raised the affirmative defenses of breach of fiduciary duty and unclean hands in their answer.  (ECF No. 62, at 4, 6; ECF No. 63, at 5-6).  But, the affirmative defenses are only cursory references to the doctrines, with no supporting facts or allegations.

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also* Schwarzer, et al., Cal. Prac. Guide Fed. Civ. Pro. Before Trial (Rutter Group 2010) ¶ 8:1050 ("An affirmative defense must be pleaded with enough specificity or factual particularity to give plaintiff 'fair notice' of the defense being advanced."). "[I]t is not enough simply to refer to a statute or doctrine without supporting facts showing its applicability." Schwarzer ¶ 8:1050.10.  "A reference to a doctrine . . . is insufficient notice." *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049 (N.D. Cal. 2004) (holding an answer alleging plaintiff is "barred from recovery . . . by the doctrines of waiver, estoppel, and unclean hands" did not provide fair notice of affirmative defenses because it did not allege facts justifying any of these doctrines).

The Court finds Defendants did not provide Plaintiffs fair notice of the doctrine of unclean hands and/or breach of fiduciary duty in the affirmative defenses asserted in their answers.  However, Defendants argue they should still be able to raise the defenses so long as Plaintiffs are not prejudiced.  (Def. MSJ 23.)  Defendants argue Plaintiffs will not be prejudiced because Defendants have emphasized their argument of Plaintiffs' ethical violations throughout this case.  (*Id.*)

"[D]efendants may raise an affirmative defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff." *Magana v. Com. of the N. Marina Islands*, 107 F. 3d 1436, 1446 (9th Cir. 1997).  In *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 08-cv-1987-GPC (MDD), 2015 WL 5638104 (S.D. Cal. Sept. 24,

2015), the court held that the defendant did not waive an affirmative defense when it raised it in the proceedings, despite the fact that the defense was not asserted in defendant's answer. The defendant had raised the argument in its opposition briefs and in support of a previous motion. *Id.* at *6. The court held that "[s]ince Plaintiff was aware of the [affirmative defenses] during the proceedings . . . raising the affirmative defense in the instant motion for summary judgment does not prejudice Plaintiff." *Id.*

The Court finds a similar situation here. As Defendants point out, they have previously raised the issue of Plaintiffs' alleged ethical breaches. In discovery, Defendants asked Eclipse whether it "obtained the informed written consent of Target Corporation regarding a potential conflict of interest as provided under California Rules of Professional Conduct, Rule 3-310(C)" during its representation of Defendants and whether Eclipse obtained informed written consent concerning the arrangement with Vendors to pay for Eclipse's legal services. (ECF No. 169-2, at 298.) Defendants also refer to a violation of California Rule of Professional Conduct ("CRPC") 2-200 and Intervenor's "numerous ethical violations" in their Motion to Compel. (ECF No. 97, at 7–9 (referencing CRPC 3-310(c) and stating "Lobbin and Eclipse were obligated to obtain the informed written consent of Defendants before Eclipse commenced its representation where [Vendors] had agreed to pay for these legal services").) Therefore, the Court finds Plaintiffs were sufficiently on notice of the affirmative defenses and are not prejudiced by the Court addressing the merits of the defenses here. Defendants have not waived the ability to assert the defenses.

### *B. Unclean Hands Analysis*

The doctrine of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978 (Ct. App. 1999) (citing *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814–15 (1945); and *Hall v. Wright*, 240 F.2d 787, 794–95 (9th Cir. 1957)). Whether the doctrine of unclean hands applies is a question of fact.

*CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 639 (Ct. App. 1998).

Specifically,

> Attorneys who violate a rule of professional conduct *may* recover in quantum meruit where they do not act in violation of an express statutory prohibition when providing legal services and where the subject services are not otherwise prohibited. On the other hand, violation of a rule that constitutes a serious breach of fiduciary duty, such as a conflict of interest that goes to the heart of the attorney-client relationship, warrants denial of quantum meruit recovery.

*Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1161 (Ct. App. 2011) (citing *Huskinson & Brown, LLP v. Wolf*, 84 P.3d 379, 385 (Cal. 2004)). Put simply, "[a]lthough the breach of a rule of professional conduct may warrant a forfeiture of fees, forfeiture is not automatic but depends on the egregiousness of the violation." *Mardirossian & Associates, Inc. v. Ersoff*, 153 Cal. App. 4th 257, 278 (Ct. App. 2007); *see also* Restatement (Third) of the Law Governing Lawyers § 37 (2000) ("A lawyer engaging in a clear and serious violation of duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter.").

### 1. CRPC 3-310(F)

Defendants argue Plaintiffs have violated CRPC 3-310(F). This rule provides:

> A member shall not accept compensation for representing a client from one other than the client unless:
> (1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and
> (2) Information relating to representation of the client is protected as required by [Cal. Bus. & Prof § 6068(e)]; and
> (3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if:
>   (a) such nondisclosure is otherwise authorized by law; or
>   (b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public.

Cal. RPC 3-310(F). Indeed, it is clear Plaintiffs have accepted compensation from Vendors for representing Defendants (the Retailers), and there is no "informed written consent" by

Defendants. Thus, the Court finds Plaintiffs violated CRPC 3-310(F).

### 2. *CRPC 3-310(C)*

Defendants also argue Plaintiffs represented both Defendants and Vendors despite a conflict of interest thus violating CRPC 3-310(C). (Def. MSJ 24.) This Rule provides:

> A member shall not, without the informed written consent of each client:
> (1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or
> (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict.
> (3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

Cal. RPC 3-310(C).

The interests of clients "actually conflict" for purposes of Rule 3–310 "whenever a lawyer's representation of one of two clients is rendered less effective because of his representation of the other." *Gilbert v. Nat'l Corp. for Housing P'ships*, 71 Cal. App. 4th 1240, 1253 (Ct. App. 1999). "A potential conflict exists whenever representation of one client might, in the future, become less effective by reason of his representation of the other." *Blecher & Collins, P.C. v. Nw. Airlines, Inc.*, 858 F. Supp. 1442, 1451 (C.D. Cal. 1994). As noted, Plaintiffs represented both Vendors and Defendants in various matters, and there is no informed written consent executed by either Defendant.[4] The issue therefore becomes whether the representation of an indemnitor and indemnitee, as in this case, poses a conflict, and whether that conflict is actual or potential.

The Court finds a potential conflict existed when Plaintiffs entered into the contract. Due to the indemnity agreement between Vendors and Defendants, it was possible Eclipse's representation of Vendors would be inconsistent with its representation of Defendants. Vendors' interests could later diverge from Defendants' interests if Vendors

---

[4] Plaintiffs argue Defendants had agreed that no conflict existed and had refused to sign informed written consents. (Pl. Supp. 3.) But a verbal agreement is insufficient; written consent is clearly required under CRPC 3-310(C).

did not pay Plaintiffs' bills, thus violating the engagement agreement and the indemnity contract. But, this potential conflict alone does not preclude recovery under quantum meruit. *See Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012) (holding "where the ethical violation is less severe, for example where the attorney represented clients with only a potential conflict of interest, California courts have affirmed decisions to award attorneys some fees depending on the equities." (citing *Pringle v. La Chapelle*, 73 Cal. App. 4th 1000 (1999)).)

The Court cannot find as a matter of law that an actual conflict existed. The Parties may have had interests that could diverge in the future, but an issue of fact exists as to whether this resulted in an actual conflict and rendered Plaintiffs' representation of either party less effective. The Court cannot find that the conflict is one that "pervades the whole [attorney-client] relationship." *U.S. ex rel. Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574 (9th Cir. 1996). Whether or not an actual conflict existed is a triable issue of fact. Accordingly, whether Plaintiffs may recover under quantum meruit is a triable issue of fact. With this finding, the Court **DENIES** Defendants' Motion for Summary Judgment.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** both Plaintiffs' and Defendants' Motions for Summary Judgment. The Parties **SHALL** confer and submit a proposed schedule of pretrial dates and deadlines going forward on or before June 8, 2018.

**IT IS SO ORDERED.**

Dated: May 30, 2018

Hon. Janis L. Sammartino
United States District Judge