Teresa C. Chow, SBN 237694
Email:  tchow@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Tel: 310.820.8800 / Fax: 310.820.8859

John S. Letchinger (Admitted *Pro Hac Vice*)
Email: jletchinger@bakerlaw.com
**BAKER & HOSTETLER LLP**
191 North Wacker Drive, Suite 3100
Chicago, IL 60606-1901
Tel: 312.416.6200 / Fax: 312.416.6201

Attorneys for Defendants
Target Corporation and Kmart Corporation

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ECLIPSE GROUP LLP, a California limited-liability partnership,<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION, a Minnesota corporation; AMAZON.COM, INC., a Delaware corporation; TOYS "R" US, INC., a Delaware corporation, KMART CORPORATION, a Michigan corporation; MENARD, INC., a Wisconsin corporation; and FINGERHUT DIRECT MARKETING, INC., a Delaware corporation,<br><br>Defendants. | CASE NO.  3:15-cv-01411-JLS-BLM<br><br>**DEFENDANT TARGET CORPORATION'S COMBINED OPPOSITION TO INTERVENOR'S MOTION FOR CONTEMPT AND TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT**<br><br>Date:  February 26, 2019<br>Time:  1:30<br>Crtrm:  4D (4th Floor—Schwartz)<br><br>Honorable Janis L Sammartino<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

                                              **Page**

I.    FACTUAL BACKGROUND ................................................................................ 2

II.   ARGUMENT ....................................................................................................... 6

       A.    Target Is Not Jointly And Severally Liable For The Entire Settlement Amount .... 6

              1.    The Settlement Agreement Calls For Two Settlement Payments, One From Each Defendant. ................................................................. 6

              2.    California Law Does Not Support Movants' Arguments About Joint Liability. ................................................................................ 9

       B.    There Is No Contempt. ....................................................................... 12

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANT TARGET CORPORATION'S COMBINED OPPOSITION TO INTERVENOR'S MOTION FOR CONTEMPT AND TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT, CASE NO. 3:15-CV-01411-JLS-BLM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Brown*,
   939 F. Supp. 2d 1012 (N.D. Cal. 2013) ...............................................................13, 14

*Cole v. Low*,
   254 P. 676 (1937) ..........................................................................................................9

*Douglas v. Bergere*,
   210 P.2d 727 (Cal. Ct. App. 1949) ..........................................................................10, 11

*Envy Haw. LLC v. Cirbin Inc.*,
   No. 16-551, 2018 U.S. Dist. LEXIS 28756 (D. Haw. Feb. 5, 2018) .........................13

*Jou v. Adalian*,
   No. 09-226, 2015 U.S. Dist. LEXIS 13786 (D. Haw. Feb. 5, 2015) ...................13, 15

*In re Marriage of Hasso*,
   280 Cal. Rptr. 919 (Cal. Ct. App. 1991) ...................................................................10

*In re Tobacco Cases I*,
   111 Cal. Rptr. 3d 313 (Cal. Ct. App. 2010) ................................................................9

**Statutes**

18 U.S.C. § 401 ...............................................................................................................13

Cal. Civ. Code § 1431 ....................................................................................................10

Cal. Civ. Code § 1636 ......................................................................................................3

Cal. Civ. Code § 1641 ......................................................................................................9

Cal. Civ. Code § 1644 ......................................................................................................8

Cal. Civ. Code § 1647 ................................................................................................3, 11

Cal. Civ. Code § 1654 ....................................................................................................12

Cal. Civ. Code § 1659 ....................................................................................................10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Defendant, Target Corporation ("**Target**"), timely paid $283,333 to satisfy its settlement obligations – $155,279.28 of which went to Plaintiff The Eclipse Group LLP ("**Eclipse**") and $128,054.05 to Intervenor Stephen M. Lobbin ("**Intervenor**" or "**Lobbin**") (Eclipse and Intervenor are sometimes hereinafter referred to as "**Movants**").  Nevertheless, Movants now contend that, in the wake of the bankruptcy filing by Kmart Corporation ("**Kmart**"), Target should be made to take on Kmart's payment obligations and pay the remaining $141,667 (with $77,639.64 to Eclipse and $64,027 to Intervenor).  As explained further below, Movants' reading of the Settlement Agreement is contrary, first and foremost, to the plain language of the Agreement itself.  Movants' position is also inconsistent with the history of this case and the cases underlying it, the parties' settlement negotiations, and California law.

Movants are also on shaky procedural ground.  Intervenor does not move this Court to enforce the terms of the Settlement Agreement.  Instead, he asks the Court to find Target in contempt and award him relief well beyond the additional $64,027 he seeks under the Settlement Agreement, including allowing him to proceed to trial, ordering a per-day sanction of Target (and Kmart), awarding him all costs and fees he incurred since the beginning of this case, and sanctioning Target's counsel and ordering them to pay his fees and costs.  Intervenor, in short, continues in his litigation quest for a windfall.  Intervenor's request for a finding of civil contempt is both procedurally improper and completely unwarranted.

Eclipse, for its part, has moved to enforce the Settlement Agreement but on grounds that are similarly defective, including a misleading recitation of California law on joint and several liability in contract and an unsupported request for a finding of contempt and the imposition of sanctions.  Eclipse relies heavily on a witness Declaration that is more instructive for what it does not state than what it does, especially when considered in the context of the parties' settlement communications.  As explained below, the fuller context of the negotiations (which

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Eclipse has directly put at issue in its Motion) is both relevant to the Court's interpretation of the Settlement Agreement (*see* Cal. Civ. Code §§ 1636, 1647) and inconsistent with Movants' assertions about joint liability.

Movants' unsupported and contradictory interpretation of the Settlement Agreement should be rejected, and their respective Motions should be denied accordingly.

## I.   FACTUAL BACKGROUND

Eclipse, a now-defunct law firm, filed this lawsuit in June 2015 to recover legal fees purportedly owing from several retailers, including Target and Kmart, for Eclipse's work defending the retailers, pursuant to contractual vendor indemnity obligations, in a variety of intellectual property and false advertising lawsuits. (ECF 1).  Intervenor, at all relevant times a partner at Eclipse, intervened over Eclipse's opposition and asserted similar claims against the retailer defendants, including Target and Kmart.  (ECF 49, 58).

These retailers – including Amazon, Toys R Us, Menard, and Fingerhut – had been sued in the underlying lawsuits because they each had resold allegedly infringing products manufactured by a common vendor, Manley.  The underlying lawsuits were filed by various plaintiffs and plaintiffs' lawyers, in multiple jurisdictions, with different combinations of retailer defendants.  Manley, pursuant to its defense and indemnity obligations to the retailers, contracted through Intervenor with Eclipse to defend these lawsuits against the retailers.  Manley, however, stopped paying Eclipse's fees, and, well after these underlying cases were resolved, Eclipse filed this lawsuit to recover from the retailers the fees that Manley allegedly refused to pay.  Intervenor later claimed that he was entitled to a portion of those fees.

When several of the retailers were dismissed for lack of jurisdiction (and Toys R Us later filed for bankruptcy), rather than suing in the appropriate jurisdictions, Movants tried to further shift the risk to the remaining retailers,

claiming that Kmart should be responsible for all fees incurred in connection with the Aviva Litigation and Target for the Worldslide and Adams Litigation. Now that Kmart has filed for bankruptcy, the Movants yet again ask this Court to shift the risk to Target – the one defendant that has honored its promise and paid its pro-rata share of the collective sum of the settlement obligation.

Target was a defendant in two of the underlying cases, referred to as the "**Worldslide Litigation**" and the "**Adams Litigation**." (ECF 1 at ¶¶ 12, 21; ECF 58 at ¶¶ 10, 22). Kmart was a defendant in a third case, referred to as the "**Aviva Litigation**." (ECF 1 at ¶ 17; ECF 58 at ¶ 16). Eclipse alleged that Target owed a total of $342,008.37 in legal fees – $91,418.71 for the Worldslide Litigation and $250,589.66 for the Adams Litigation, based on the separate invoicing for each of the respective cases. (ECF 50 at ¶¶ 11, 20). Eclipse alleged that Kmart owed $145,629.41 in legal fees for the Aviva Litigation, also based on invoicing for that case. (*Id.* at ¶ 16). Intervenor sought to recover a portion of these allegedly unpaid amounts, likewise, delineating by matter and party per the invoices. (ECF 58 at ¶¶ 13, 19, 24).

Eclipse and Intervenor, in short, sought a total of $487,637.78 in legal fees from Target and Kmart,[1] of which, based on the invoiced amounts alleged by Movants, Target was allegedly responsible for approximately 70% and Kmart for approximately 30%. Target and Kmart were not co-defendants in any of these three cases, and neither Eclipse nor Intervenor alleged in their subsequent claims against Target and Kmart that Target and Kmart should be jointly liable for each other's allegedly unpaid legal fees arising out of different underlying actions.

In May 2018, this Court denied the parties' cross-motions for summary judgment. (*See* ECF 193). Bypassing Intervenor, on June 27, 2018, Jennifer

---

[1] In addition to the allegedly unpaid legal fees detailed above, Eclipse and Intervenor also sought interest, and Intervenor advanced a reverse contingent fee theory in an effort to recover up to $10 million in damages, grossly multiplying the proceedings in this case.

Hamilton, former managing partner of Eclipse, reached out to Defendants' counsel, John Letchinger, by phone to discuss potential settlement and, if achieved, a joint effort to move this Court to enforce a settlement against Intervenor. (*See* Declaration of John Letchinger ("**Letchinger Dec.**"), a copy of which is attached hereto, at ¶ 2).

The pace of the settlement discussions was fast, as a trial date had been set. Most of the negotiations were conducted by phone and were collegial and cooperative. (*See* Letchinger Dec. at ¶¶ 2-4). All negotiations concerning the settlement amount were based on the invoiced amounts at issue for each of the three underlying cases.[2] (*Id.* at ¶¶ 3-4). Eclipse and the Defendants ultimately came to terms on a settlement on June 28, 2018, only one day after Ms. Hamilton first reached out to open the discussions. (*Id.* at ¶ 4). Defendants initially expressed the preference and assumption that the settlements be documented in two separate agreements, one for each Defendant, since each Defendant would be paying a portion of the overall amount. (*Id.*). Eclipse indicated that it preferred one agreement, primarily to save time given the impending deadlines in the Court's pre-trial schedule, and Ms. Hamilton even joked that she would do the drafting if it were one document (which she ultimately did). (*Id.*). Counsel for Defendants agreed, subject to the inclusion of the appropriate language indicating payments by both Defendants. (*Id.*).

Eclipse and Defendants subsequently summarized the material terms of their settlement in a June 28, 2018 e-mail exchange ("**Summary of Terms**"). (*See* Letchinger Dec. at ¶ 5, Ex. A). In point number 1 of the Summary of Terms, John

---

[2] In her Declaration, Ms. Hamilton addresses this issue very narrowly, asserting only that Eclipse was never aware of the exact 1/3 – 2/3 split. But, it was openly discussed that each of Target and Kmart were paying on a pro-rata basis, based on the invoiced amounts directed to each. (*See* Letchinger Dec. at ¶ 3). In that regard, when the parties were stuck at a number a bit higher than the ultimate $425,000 total amount, counsel for Defendants specifically noted to Ms. Hamilton that Target likely would not agree to a settlement unless its share was under $300,000. At a $425,000 total, agreement was reached. (*Id.*).

Letchinger, counsel for the Defendants, specified that "Target and Kmart agree to pay $425,000 **(this will be two separate payments by Target and Kmart in amounts to be determined by them, such payments equaling $425,000).**" (*Id.*). (emphasis added). Ms. Hamilton confirmed Eclipse's agreement to the summarized terms. (*Id.*).

On the same day (June 28, 2018), Eclipse and the Defendants worked cooperatively to jointly move this Court to suspend the trial deadlines and enforce the settlement detailed in the Summary of Terms against Intervenor. (ECF 200). Several days later, Ms. Hamilton advised Mr. Letchinger that Intervenor had conditionally agreed to the settlement terms, the condition being that his portion be paid directly by Target and Kmart, as he did not trust Eclipse to forward his share. (*See* Letchinger Dec. at ¶¶ 6-7, Ex. B). Though Intervenor's request had the potential to further complicate the settlement, Mr. Letchinger indicated willingness to recommend the concept to his clients. (*See* Letchinger Dec. at ¶ 7).

As promised, Eclipse, a few days later, prepared the first draft of the formal Settlement Agreement ("**Draft Settlement Agreement**"). Ms. Hamilton sent this Draft Settlement Agreement to Mr. Letchinger on July 10, 2018. (*Id.* at ¶ 8, Ex. C).

Section 3 of the Draft Settlement Agreement, which governed the consideration to be paid by Defendants, specified that "Target and Kmart agree to cause Eclipse and Lobbin to be paid a **collective sum of $425,000…"** and further included the following language, taken, in part, from Mr. Letchinger's June 28 e-mail: **"Eclipse and Lobbin recognize that Target and Kmart will each pay a portion of the Settlement Payment and Eclipse and Lobbin may receive their payments in one or more checks/wire payments from Target and/or Kmart."** (*See* Draft Settlement Agreement at § 3) (emphasis added). Ms. Hamilton indicated in her transmittal e-mail that the "attached draft settlement agreement is in a form that is acceptable for signature by both Lobbin and Eclipse." (*See* Letchinger Dec.

at ¶ 8, Ex. C). In a subsequent e-mail, Mr. Letchinger noted that each Defendant was obligated to pay a portion of the settlement amount. (*Id*. at ¶ 9, Ex. D).

The parties ultimately signed the Settlement Agreement with an effective date of August 1, 2018. (*See* Letchinger Dec. at ¶ 10, Ex. E). The executed version of the Settlement Agreement includes the identical payment language quoted above that was part of the Draft Settlement Agreement transmitted on July 10. (*Id*. at § 3).

On September 28, 2018, this Court approved the parties' settlement. (ECF 228). On October 15, 2018, Kmart declared bankruptcy, and this case was automatically stayed as to Kmart before payment by either Defendant was due. (ECF 229). On November 14, 2018, Target made its timely settlement payment of $283,333 – $155,279.28 of which went to Eclipse, with the remaining $128,054.05 to Intervenor. Because of its bankruptcy filing, Kmart has not paid its $141,667 portion of the settlement amount.

## II. ARGUMENT

### A. Target Is Not Jointly And Severally Liable For The Entire Settlement Amount

#### 1. The Settlement Agreement Calls For Two Settlement Payments, One From Each Defendant.

Movants are now claiming that, by refusing to pay the full settlement sum of $425,000, Target is in breach of the Settlement Agreement and in contempt of the Court's September 28 Order approving the parties' settlement. (ECF 230, 234). Movants are effectively arguing that Target signed up to be a guarantor for the collective settlement "sum" and to be jointly liable for the entire settlement amount under the Settlement Agreement. Movants claim that the Settlement Agreement imposes a "clear obligation" on "**both** Target **and** Kmart to each ensure that the *entire* settlement amount is paid, in full." (ECF 230 at p. 4; ECF 234 at pp. 3-4) (emphasis in original). Intervenor even goes so far as to claim that there is "unequivocal clarity" in the Settlement Agreement "of each Defendant's obligation to ensure full payment of the entire settlement amount." (ECF 230 at p. 4). Eclipse

is likewise adamant on this point, claiming there is "unequivocal clarity" that "both Defendants are jointly liable for the entire settlement amount." (ECF 234 at p. 4).

Yet, neither Movant points to any such "clear" or unequivocal" language in the Settlement Agreement, and no such language exists. The Settlement Agreement does not say that Target and Kmart are jointly and severally liable for anything, including the settlement amount. Indeed, the term "joint" appears nowhere in the Settlement Agreement. And, it does not say that both Defendants are obligated to ensure that the entire settlement amount is paid. The only relevant language in the Settlement Agreement specifies the opposite, consistent with the underlying liability in the case.

The parties also did not use boilerplate language in the payment provision. Instead, the parties crafted unique and specific language to describe the payment terms and, as part of that effort, chose to characterize the settlement payment as a "sum" )(which, in this context, refers to the total of each of Kmart's and Target's respective payments), as all parties had agreed that each defendant had its own payment obligations.[3] (*See* Settlement Agreement at § 3; Letchinger Dec. at ¶¶ 3-5, Ex. A; *see also* ECF 228 at 4). This is further clarified and substantiated later in Section 3 of the Settlement Agreement, which includes the express statement that Eclipse and Intervenor understand that Target and Kmart will each pay a portion of the settlement amount. (*See* Settlement Agreement at § 3).

Intervenor argues that this language is "meaningless, irrelevant surplusage." (ECF 230 at p. 4). Eclipse claims that this language was simply a "statement" of "logistics." (ECF 234 at p. 4). Ms. Hamilton goes so far as to express "surprise", when she declares that "[u]nbeknownst to Plaintiff until recently, [Defendants] had apparently agreed, amongst themselves, that, under the Settlement Agreement, Target would pay 2/3 of the settlement obligation and that Kmart would be

---

[3] *See* Cal. Civ. Code § 1644 ("The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning . . .")

responsible for the other 1/3 of the settlement obligation." But, Ms. Hamilton was the one who specifically agreed not only to the language about a "collective sum" and an express acknowledgment that each of Target and Kmart would be responsible for paying a portion, but also that Kmart and Target would determine the respective payment amounts. (*See* Letchinger Dec. at ¶¶ 3-5, Exs. A and C). Importantly, Ms. Hamilton is careful not to declare that she was unaware that there was a split between Kmart and Target and that each would be responsible for its own portion. Indeed, in light of the e-mail correspondence summarized above, Ms. Hamilton cannot make such a claim. Eclipse's attempt to claim "surprise" on this issue is disingenuous.

Putting Ms. Hamilton's Declaration aside, Movants ignore that they made an express agreement for a split of responsibility as between Kmart and Target, one which they subsequently detailed in the joint Motion to Approve Settlement. (ECF 208). Their effort to persuade this Court to simply dismiss the operative language in the Settlement Agreement should be rejected, as California law requires that contracts be interpreted to give meaning to each word and phrase of the contract. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also In re Tobacco Cases I*, 111 Cal. Rptr. 3d 313, 318 (Cal. Ct. App. 2010) (courts should avoid an interpretation that renders part of the instrument surplusage); *Cole v. Low*, 254 P. 676 (1937) ("A contract shall be so construed as to give force and effect, not only to every clause, but to every word in it, so that no clause or word may become redundant, unless such construction would be obviously repugnant to the intention of the parties, to be collective from its terms, or would lead to some absurdity.").

Movants, in short, ask this Court to ignore the clear and explicit language in the Settlement Agreement calling for separate settlement payments from Target and Kmart and instead find that Target is responsible for the full settlement amount, in

the absence of any express language to that effect. This makes no sense and should be rejected out of hand.

### 2. California Law Does Not Support Movants' Arguments About Joint Liability.

Movants also make almost no effort to base their arguments in the law. Intervenor cites no authority for any of his unsupported assertions about joint and several liability. And, Eclipse's explanation of California law is incomplete and misleading.

Eclipse relies on Section 1431 of the California Civil Code, which addresses joint liability generally. (ECF 234 at p. 6). But, this is only the starting point of the analysis when dealing with questions of joint liability under a contract. "A settlement agreement is in the nature of a contract and is therefore governed by the same legal principles applicable to contracts generally." *In re Marriage of Hasso*, 280 Cal. Rptr. 919, 922 (Cal. Ct. App. 1991). As made clear on the face of Section 1431, there is an entirely different title of the Civil Code – called "Interpretation of Contracts" – that addresses joint and several liability in the context of contract interpretation, and several of these provisions are relevant here. Under certain circumstances, there can be a presumption in favor of joint and several liability, as set forth in Section 1659 of the Civil Code, but the presumption is weak and can be rebutted by contrary evidence, including the surrounding circumstances at the time the contract was made.[4] *Douglas v. Bergere*, 210 P.2d 727, 730 (Cal. Ct. App. 1949). "In determining whether the promises were several or joint and several, when uncertainty arises concerning the meaning of a contract, the language used by

---

[4] Eclipse appears to try to mislead the Court on the proper weight to be given the presumption by citing to and quoting the presumption language in Section 1431. (ECF 234 at p. 6). But, on its face, this language does not apply, as it pertains only to joint rights, not joint obligations, like the payment obligation at issue here. *See* Cal. Civ. Code § 1431 ("This presumption, **in the case of a right**, can be overcome only by express words to the contrary.") (emphasis added). The only presumption that could arguably apply here is contained in Section 1659, and, as explained above, that presumption is weak and easily rebutted, and, in fact, easily rebutted here in light of the surrounding circumstances detailed in this brief. Eclipse cited to the Section 1659 presumption but did not mention that it is weak or easily rebutted.

the parties is to be considered in the light of the surrounding circumstances and of the practical and mutual construction placed thereon as shown by their acts and conduct before any controversy has arisen between them." *Id.*; *see also* Cal. Civ. Code § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.").

Here, both the surrounding circumstances and the parties' negotiation of the Settlement Agreement make clear that there was no intention to create joint and several liability for the full settlement amount. Eclipse and Intervenor sought to recover allegedly unpaid legal fees for three separate cases, two involving Target and one involving Kmart. Target and Kmart were not co-defendants in any of the cases, and Eclipse and Intervenor did not jointly represent Target and Kmart. The respective legal fees allegedly incurred and owing by Target and Kmart were always separate obligations, and there was no claim in the case that Target and Kmart should be jointly liable for each other's legal fees. Movants now urge that Target signed up to be responsible for Kmart's tab.

When the parties agreed to the settlement amount of $425,000, it was understood that Target and Kmart would each pay a portion of the settlement amount, based on the amounts invoiced to each. (*See* Letchinger Dec. at ¶ 3, Exs. A and C). This is clearly reflected in the settlement communications and the language ultimately incorporated into Section 3 of the Settlement Agreement. (*Id.*; Settlement Agreement at § 3). In asking this Court to now order Target to pay the full $425,000, Intervenor is essentially trying to make Target pay for legal fees incurred by Kmart in a patent case – the Aviva Litigation – in which Target was not a defendant and for which Target never even had exposure in the underlying case before this Court. Such a result would be inequitable and should be rejected.[5]

---

[5] Movants not only ignore the operative payment language, but cite to no language in the Settlement Agreement that even suggests any such willingness to convert several liability to joint.

Movants do not and cannot deny any of this history. Eclipse tries to narrowly refute it by claiming that neither Movant knew of the exact allocation of the settlement payment between Target and Kmart. (ECF 234 at pp. 5-7, ECF 234-1 at ¶¶ 3-6). But this is irrelevant.[6] All parties agreed that each Defendant would be responsible to pay a portion. All parties agreed to include such language in the Settlement Agreement. If Movants wanted specificity as to how much would be paid by each Defendant, they had every opportunity to ask for these specifics and include them in the Agreement.

Instead, Movants agreed in the Summary of Terms to allow Kmart and Target to determine the amounts of their respective payments. Target and Kmart were up front and clear on the issue; Movants were either agreeable or, consistent with history, perhaps purposefully remaining silent to preserve an argument. As such, to the extent there is any uncertainty in the Settlement Agreement, such uncertainty was created by Movants' choice not to propose express joint liability language in the Settlement Agreement.[7] Any such uncertainty must be construed against Movants. *See* Cal. Civ. Code § 1654 ("In cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist.").

---

[6] To the extent the Court believes that the payment language in the Settlement Agreement is ambiguous, Target respectfully requests that the Court allow it to conduct limited, but sufficient discovery aimed at determining Movants' understanding of the payment terms and conditions.

[7] This failure is particularly glaring because, as early as December 2017, Eclipse and Intervenor were anticipating an impending bankruptcy filing by Kmart, to the point where they used it as justification for asking the Court to schedule a jury trial as soon as possible. (ECF 177 at p. 2, fn. 3). If Movants were concerned about Kmart's ability to pay, one would think they would have insisted that the Settlement Agreement make clear that the payment obligation was joint. Movants never made any such request or demand, likely because they knew neither Defendant would agree to it.

### B. There Is No Contempt.

This is a disagreement about the proper interpretation of a contract. But, Intervenor did not bring a motion to enforce the Settlement Agreement. Instead, he brought a Motion for Contempt, in another transparent and misguided attempt to escalate this dispute and distract from the merits. Eclipse has now joined in a request for a contempt finding, but these requests are meritless and should be rejected out of hand.

As an initial matter, it is unclear whether it is even proper for Movants to have initiated civil contempt proceedings. Two district courts in the Ninth Circuit have recently rejected efforts to seek a civil contempt finding when the moving party was seeking to enforce the payment terms of a settlement. *Envy Haw. LLC v. Cirbin Inc.*, No. 16-551, 2018 U.S. Dist. LEXIS 28756, at *4 (D. Haw. Feb. 5, 2018) (where defendant did not comply with order granting motion to enforce settlement, court rejected subsequent civil contempt motion, finding that "contempt proceedings are an improper means of securing payment"); *see also Jou v. Adalian*, No. 09-226, 2015 U.S. Dist. LEXIS 13786, at *16 (D. Haw. Feb. 5, 2015) ("But given this procedural posture – where Jou is only attempting to collect payment on a final money judgment – it has become apparent that civil contempt proceedings are (and were) improper and must now be terminated.").

Even assuming Movants' requests for contempt are procedurally proper, they have nevertheless failed to meet their considerable burden on such a motion. Civil contempt proceedings are authorized under 18 U.S.C. § 401. "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the non-moving party violated a specific and definite order of the court." *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013). Importantly, "a person should not be held in contempt if his action appears to be based on a good-faith and reasonable

interpretation of the court's order." *Armstrong v. Brown*, 939 F. Supp. 2d 1012, 1018 (N.D. Cal. 2013).

Here, Movants claim that Target violated the Court's September 28, 2018 Order – specifically, the portion of the Order in which the Court directed the parties "to comply with the terms of the Settlement Agreement." (ECF 230 at p. 3; ECF 234 at p. 3; *see also* ECF 212). Of course, the Order says nothing about the disputed issue currently before the Court – namely, whether Target is jointly and severally liable for the entire settlement amount. The Order simply states that the parties should comply with the terms of the Settlement Agreement. And, as explained above, Target's conduct is based on a good-faith interpretation of the payment terms, given the history of the case, the parties' negotiations, and the language of Section 3 of the Settlement Agreement. There is simply no basis to claim that Target has violated a specific and definite requirement of this Court's September 28 Order.

Perhaps more important, the only reason the parties moved the Court to issue an Order approving settlement was because of a judgment lien issue involving Movants that had nothing to do with Target or Kmart.[8] (ECF 206). After determining that the judgment lien creditor had no rights to the settlement proceeds, this Court approved the settlement. (ECF 228). There is no good faith basis for Movants to now attempt to leverage this Order into a contempt finding against Target.

There is also no basis to award Intervenor the relief he requests in his Motion, which makes plain that he is more interested in unraveling the Settlement Agreement than enforcing its terms and receiving payment of the remaining settlement amount. Indeed, Intervenor asks the Court to allow him to proceed to

---

[8] Even that motion, which Movants prepared, specifies that "the Settlement includes lump sum payments, in material amounts, **to be made by Kmart and Target**…" (ECF 206 at p.2) (emphasis added).

13
DEFENDANT TARGET CORPORATION'S COMBINED OPPOSITION TO INTERVENOR'S MOTION FOR CONTEMPT AND TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT, CASE NO. 3:15-CV-01411-JLS-BLM

trial, which would, by definition, require the Court to first invalidate the Settlement Agreement. (ECF 230 at pp. 5-6). He also asks the Court to award a per-day sanction against Target, to award him all fees and costs he has "incurred in this entire action since 2015)," and to sanction Target's counsel and order counsel to pay his fees and costs. (*Id*. at pp. 6-7). Eclipse likewise asks for a per-day penalty of $1,500 and the imposition of sanctions against Target's counsel. (ECF 234 at p. 8). Movants cite no authority that would indicate any of this relief is appropriate under these circumstances. And, none of this is necessary to enforce the terms of the Settlement Agreement. It is a transparent attempt by Movants to obtain a windfall and distract from the merits.

Movants, in short, are trying to turn a straightforward contract dispute into a civil contempt proceeding. They cite no authority for such a request.[9] It should be denied accordingly.

Dated: February 12, 2019

**BAKER & HOSTETLER LLP**

By: */s/ John S. Letchinger*
John S. Letchinger

Attorneys for Defendants
TARGET CORPORATION AND KMART CORPORATION

---

[9] The case law Intervenor cites in support of his request for a civil contempt finding is inapposite. (ECF 230 at p. 5). There was no contempt at issue in *Bouman*, so it has no relevance here. Both *EDebitPay* and *Pigford* involved the alleged violations of government consent decrees that enjoined certain conduct, not disputes over the payment of money pursuant to a settlement agreement. And, in both *Reebok* and *Reno Air*, the Ninth Circuit <u>reversed</u> district court findings of contempt. Intervenor also offers no authority supporting his requested relief.

# **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that he served a copy of the foregoing on all counsel of record via the Court's CM/ECF system.

Dated: February 12, 2019         */s/ John S. Letchinger*
                                John S. Letchinger