UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ECLIPSE GROUP LLP, a California limited-liability partnership,<br><br>          Plaintiff,<br><br>v.<br><br>TARGET CORPORATION, a Minnesota corporation, et al.,<br><br>          Defendants. | Case No.: 15-CV-1411 JLS (BLM)<br><br>**ORDER DENYING PLAINTIFF AND INTERVENOR'S MOTION FOR RECONSIDERATION**<br><br>(ECF No. 242) |

Presently before the Court is Plaintiff The Eclipse Group LLP's Application for Reconsideration re Motion to Enforce Settlement Agreement ("Mot.," ECF No. 242), as well as Intervenor Stephen M. Lobbin's Joinder (ECF No. 246). The Court vacated the hearing and took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 244. Having carefully considered its prior Order, the Parties' arguments and evidence, and the law, the Court **DENIES** the Motion.

## BACKGROUND

The Court incorporates by reference the factual background as detailed in the Court's May 21, 2019 Order, *see* ECF No. 240 (the "Order") at 2–3; however, to recap, briefly: On September 28, 2018, the Court approved pursuant to California Code of Civil Procedure § 708.440 a settlement agreement (the "Settlement Agreement," ECF No. 212) executed

by Plaintiff, Intervenor, and Defendants Target Corporation and Kmart Corporation on August 1, 2018. *See generally* ECF No. 228. In relevant part, the Settlement Agreement provided:

> Target and Kmart agree to cause Eclipse and Lobbin to be paid a collective sum of $425,000.00, to be distributed between Eclipse and Lobbin as detailed in this Agreement, within 20 business days after . . . exhaustion of all appeal rights . . . .
>
> . . .
>
> Eclipse and Lobbin recognize that Target and Kmart will each pay a portion of the Settlement Payment and Eclipse and Lobbin may receive their payments in one or more checks/wire payments from Target and/or Kmart.

Settlement Agreement § 3. Although Target timely paid $155,279.28 to Plaintiff and $128,054.05 to Intervenor, *see* ECF No. 236 at 6, Kmart had already filed a Notice of Bankruptcy Filing and Imposition of Automatic Stay, *see* ECF No. 229, and therefore failed to pay the remaining $77,639.64 due to Plaintiff or $64,027.46 due to Intervenor by the payment deadline. *See* ECF No. 230 at 4; ECF No. 234 at 5. Following Target's refusal to pay the remaining $141,667, Plaintiff and Intervenor requested that the Court order Target to pay the amounts owing under the Settlement Agreement, plus interest and daily penalties. *See generally* ECF Nos. 230, 234.

On May 21, 2019, the Court denied Plaintiff's and Intervenor's motions, concluding that "the plain language of [section 3 of the Settlement Agreement] does not impose joint and several liability on Target and Kmart" because they each agreed to pay a portion of a collective sum. *See* Order at 5. Further, "[t]o the extent that there is any ambiguity in the provision . . . , thereby allowing the Court to accept the Parties' extrinsic evidence . . . , that evidence bolsters the conclusion that the Parties did not intend for Target and Kmart to be jointly (or jointly and severally) liable for the $425,000 settlement payment." *Id.* at 5 (citing *Wolf v. Super. Ct.*, 114 Cal. App. 4th 1343, 1351 (2004)). Although no Party requested an evidentiary hearing, *see generally* ECF Nos. 230, 234, 236, 238, 239, the

2

15-CV-1411 JLS (BLM)

Court concluded that no evidentiary hearing was necessary because it relied only on facts that neither Plaintiff nor Intervenor disputed at that time. *See* Order at 5–6 & n.1.

Following the Court's denial of Plaintiff's and Intervenor's motions, Target filed a motion for its attorneys' fees under the Settlement Agreement on June 3, 2019. *See* ECF No. 241. On June 10, 2019, Plaintiff filed the instant Motion, *see generally* ECF No. 242, in which Intervenor joined on July 15, 2019. *See generally* ECF No. 246. The Court therefore denied without prejudice as moot Target's motion for attorneys' fees pending resolution of the instant Motion. *See* ECF No. 244.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to move a court to alter or amend its judgment. In the Southern District of California, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ. L.R. 7.1(i)(1). The moving party must provide an affidavit setting forth, *inter alia*, new or different facts and circumstances which previously did not exist. *Id.*

"A district court may grant a Rule 59(e) motion if it 'is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc)) (emphasis in original). Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Ultimately, whether to grant or deny a motion for reconsideration is in the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883). A party may not raise new arguments or present new evidence if it could have reasonably raised them earlier. *Kona Enters.*, 229 F.3d at 890 (citing 389 *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

///

# PLAINTIFF'S MOTION

Plaintiff contends that the Court's May 21, 2019 Order denying its motion to enforce the Settlement Agreement against Target "is fundamentally flawed for two reasons" and therefore merits reconsideration on the grounds that the Court "committed clear error or the [Order] was manifestly unjust." Mot. at 1 & n.1 (quoting *Farr v. Paramo*, No. 16-CV-1279-JLS (MDD), 2018 WL 1156445, at *1 (S.D. Cal. Mar. 2, 2018)). "First, [the Order] ignores the specific California statute that establishes joint and several liability," California Civil Code section 1431 ("Section 1431"). *Id.* "Second, it totally fails to take into account an essential fact, that the parties' Settlement Agreement, through the inclusion of an integration clause, prohibits the use of parol/extrinsic evidence in interpreting the contract." *Id.* Plaintiff also argues that "the Court's interpretation of the declaration of Defendants' counsel is incorrect" and that "the Court should re-open these proceedings and allow full and fair testimony, including cross-examination." *Id.* at 2.

## I. Parol Evidence

Plaintiff first claims that the Court "did not present a key fact, which is that the Agreement itself expressly prohibits the use of extrinsic evidence for contract interpretation." Mot. at 2. Target responds that "Section 9 of the Settlement Agreement is nothing more than a standard integration clause" that "says nothing about the use of extrinsic evidence." ECF No. 235 ("Opp'n") at 5.

Unlike a student taking an algebra examination, the Court need not "show its work." As the Court noted in its Order, it is a general and well-accepted principle of California law that, "*[e]ven in an integrated contract*, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning." Order at 4 (emphasis added) (quoting *Hot Rods, LLC v. Northrop Grumman Sys. Corp.*, 242 Cal. App. 4th 1166, 1175–76 (2015)).[1] The Court

---

[1] Plaintiff boldly accuses the Court of "misrepresent[ing]" *Hot Rods*. *See* Mot. at 3. To the contrary, the word "[o]rdinarily" that the Court omitted merely bolsters that the Court was reciting a general and long-standing canon of California contract law when it quoted *Hot Rods* in its Legal Standard. *See* 242 Cal.

then concluded that—to the extent that there was any ambiguity in the Settlement Agreement—the Court could consider the Parties' extrinsic evidence to explain the contested provision. *See id.* at 5 (citing *Wolf*, 114 Cal. App. 4th at 1351). Implicit in the Court's Order is the conclusion that, despite the integration clause in the Settlement Agreement, the general rule that extrinsic evidence can be used to explain the meaning of the contested provision applies.

To the extent Plaintiff "respectfully suggest[s] that the Court should explain why" the integration clause in the Settlement Agreement is not "controlling," *see* Mot. at 4, again, parol evidence may be admitted even when an agreement contains an integration clause unless the parties explicitly express an "intent . . . to bypass the general rule that consistent extrinsic evidence is admissible to explain the meaning of a contractual provision." *See Hot Rods*, 242 Cal. App. 4th at 1176. This is not such a case. *Compare id.* at 1175 ("The Parties further intend that this Agreement constitutes the complete and exclusive statement of its terms and that *no extrinsic evidence whatsoever may be introduced in any judicial proceedings involving this Agreement*.") (emphasis added), *with* Settlement Agreement § 9 ("This Agreement constitutes the complete and final agreement of the Parties with respect to the subject matter hereof, and supersedes all prior or contemporaneous oral or written agreements, offers or understandings with respect to such subject matter."). The Settlement Agreement's integration clause therefore does not prohibit consideration of parol evidence.

On reply, Plaintiff appears to change tack to argue that the Court inappropriately considered parol evidence to "add terms to the Agreement" rather than to explain terms. *See* ECF No. 27 ("Reply") at 4–6. There is no dispute, however, that the Settlement Agreement does not specify "any apportionment of payment between Target and Kmart," *see* Mot. at 5, and the Court's Order did not "add" any such apportionment based on the extrinsic evidence. Rather, the Court concluded that—to the extent there was any

---

App. 4th at 1175; *see also* Order at 4. For the reasons discussed herein, the exception outlined in *Hot Rods* does not apply here.

ambiguity concerning whether the Parties agreed that Target and Kmart were not jointly and severally liable—the extrinsic evidence bolstered the plain language of the Settlement Agreement that "Target and Kmart will *each* pay a *portion* of the Settlement Payment." Settlement Agreement § 3 (emphasis added); *see also generally* Order at 5–8. The Parties did not agree to a specified apportionment between Target and Kmart and the Court has not read one into the Settlement Agreement.

For all these reasons, the Court declines to reconsider its Order on the basis that it erred by considering parol evidence.

## II. Joint and Several Liability

Plaintiff next contends that joint and several liability is "[m]andated" by California Civil Code section 1431, rendering "this Court's decision . . . fundamentally erroneous." Mot. at 67 (emphasis omitted).

Before reaching Plaintiff's specific arguments, the Court briefly explains the relevant statutory framework. Section 1431 appears in Division 3, Part 1, Title 2 of the California Civil Code, which covers the interpretation of obligations. *See generally* Cal. Civ. Code D. 3, Pt. 1, T. 2. There are several varieties of obligations that can be created:

> An obligation imposed upon several persons, or a right created in favor of several persons, may be:
>
> 1. Joint;
>
> 2. Several; or,
>
> 3. Joint and several.

Cal. Civ. Code § 1430. Section 1431 then provides the general rule regarding the interpretation of obligations:

> An obligation imposed upon several persons, or a right created in favor of several persons, is presumed to be joint, and not several, except . . . in the special cases mentioned in the title on the interpretation of contracts. This presumption, in the case of a right, can be overcome only by express words to the contrary.

Cal. Civ. Code § 1431.

In the case of obligations created by contract, such as here, the general rule in Section 1431 is subject to "special cases mentioned in the title on interpretation of contracts," *see id.*, which appears in Division 3, Part 2, Title 2 of the California Civil Code. *See generally* Cal. Civ. Code D. 3, Pt. 2, T. 2. That title provides additional guidance regarding the presumptions governing the interpretation of contracts. For example, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several." Cal. Civ. Code § 1659 ("Section 1659"). Additionally, "[a] promise, made in the singular number, but executed by several persons, is presumed to be joint and several." Cal. Civ. Code § 1660 ("Section 1660").

Plaintiff contends that "there is nothing in the Agreement which contains express words" to overcome the presumption of joint liability appearing in Section 1431. *See* Mot. at 6. There are two errors in Plaintiff's argument.

First, the presumption of joint liability can only be overcome by "express words to the contrary" "in the case of a *right*." *See* Cal. Civ. Code § 1431 (emphasis added). Here, by contrast, the Settlement Agreement created an *obligation* for Target and Kmart to pay a settlement to Plaintiff and Intervenor.[2] *See* Settlement Agreement § 3; *see also* Cal. Civ.

---

[2] Bafflingly, after moving for the Court to compel Target to pay under Paragraph 3 of the Settlement Agreement on the grounds that they were jointly obligated to pay the settlement payment, *see* ECF No. 234 at 3–4, Plaintiff now argues that Paragraph 3 does not impose "liability," but rather governs "the mechanics of the payments":

> [T]he plain language of the provision neither imposes joint liability nor several liability, nor any liability whatsoever. In fact, that paragraph dealt with the mechanics of the payments and says nothing about individual or separate liability of either Defendant to Plaintiff. Again, if the Court was of the opinion that that paragraph created liability, then it would have been helpful for the Court to say so. What actually happened was that the Court correctly determined that it could not find a clear statement of individual liability and therefore it went to outside agreements, discussions, declarations, and e-mails, all of which were precluded from consideration by the express terms of the contract provisions referenced above.

7

Code § 1427 ("An obligation is a legal duty, by which a person is bound to do or not to do a certain thing."). Under these circumstances, "express words" are not necessary to rebut the presumption of joint liability.

Second, pursuant to the express terms of Section 1431, Sections 1659 and 1660 apply where, as here, the issue is "joint and several liability in the context of contract interpretation." *See* Opp'n at 3. But such presumptions are "rebuttable and '. . . the weakest and least satisfactory character of evidence.'" *Grover Prods., Co v. Air Horns of Tex., LLC*, No. 218CV00708VAPKSX, 2018 WL 6118435, at *3 (C.D. Cal. Oct. 17, 2018) (quoting *Douglas v. Bergere*, 94 Cal. App. 2d 267, 271, (1949)); *see also* Opp'n at 3 (citing *Douglas*, 94 Cal. App. 2d at 271; *Grover Prods.*, 2018 WL 6118435, at *3). Consequently, "[w]hen there is evidence to the contrary, the presumption no longer controls." *Grover Prods.*, 2018 WL 6118435, at *3 (citing *Douglas*, 94 Cal. App. 2d at 271).

Here, the plain language of the Settlement Agreement clearly evinces the Parties' agreement that Target and Kmart would not be jointly and severally liable for the settlement payment: "Target and Kmart agree to cause Eclipse and Lobbin to be paid a collective sum of $425,000.00 . . . . Eclipse and Lobbin recognize that Target and Kmart will *each* pay a *portion* of the Settlement." Settlement Agreement § 3 (emphasis added); *see also Grover Prods.*, 2018 WL 6118435, at *3 ("Furthermore, the section of the Settlement Agreement that Plaintiff relies on states that Defendants '**each** agree to permanently cease and refrain from' engaging in prohibited activities . . . . In other words, the contract contemplates each Defendant will refrain from wrongdoing, as opposed to presuming joint and several liability.") (emphasis in original). This is sufficient to rebut

---

Mot. at 4–5. The Court did not conclude that Paragraph 3 "created liability"; rather, Paragraph 3 creates an obligation. *See* Cal. Civ. Code § 1427 ("An obligation is a legal duty, by which a person is bound to do or not to do a certain thing."); *see also* Cal. Civ. Code § 1549 ("A contract is an agreement to do or not to do a certain thing."). Plaintiff contends that that *obligation* is presumed to be joint pursuant to Section 1431, but for the reasons set forth in the Court's May 21, 2019 Order, *see generally* Order, and herein, Plaintiff is incorrect. One of those reasons, however, is that "Eclipse and Lobbin recognize[d] that Target and Kmart w[ould] *each* pay a *portion* of the Settlement Payment." *See* Settlement Agreement § 3 (emphasis added).

8

the presumption of joint and several liability. *See, e.g.*, *Douglas*, 94 Cal. App. 2d at 271; *Gover Prods.*, 2018 WL 6118435, at *3.

Accordingly, as the Court previously concluded, *see* Order at 5, the plain language of the Settlement Agreement does not obligate Target to pay the entirety of the settlement payment and, to the extent there does exist any ambiguity, Target's uncontroverted evidence bolsters the Court's interpretation. *See id.* at 5–8. The Court therefore declines to reconsider its Order on the basis that "[i]t is fundamentally unfair, as well as in violation of the statute and the law." *See* Mot. at 7.

## III. Evidentiary Hearing

Finally, Plaintiff contends that, "[a]ssuming *arguendo* that the Court was correct in considering extraneous evidence, there were still issues of fact because of the declaration presented by Jennifer Hamilton," Mot. at 7, and that "fundamental fairness requires that Plaintiff and Intervenor be given their day in court." *Id.* at 9. Further, Plaintiff claims that "[i]t appears from the timing of the events that Target, Kmart, and their attorneys may have deliberately provided the paragraph on which the [C]ourt relies in order to limit Target's liability without expressly so stating." *Id.* Plaintiff therefore requests the opportunity to examine Target's counsel and personnel about this "essentially fraudulent ploy." *Id.* at 10–11.

As noted in the Court's Order, *see* Order at 5–6 & n.1, there were no issues of fact presented by Ms. Hamilton's original, January 29, 2019 declaration. *See* ECF No. 234-1 ("1st Hamilton Decl."). Indeed, citing to Ms. Hamilton's original declaration, the Court explicitly acknowledged that "the Parties dispute whether Target and/or Kmart informed Plaintiff and/or Intervenor in advance of the precise allocation of the payment between Target and Kmart." *See* Order at 5 (citing 1st Hamilton Decl. ¶ 4). The First Hamilton Declaration, however, did not controvert any of the facts relied upon by the Court in its May 21, 2019 Order, *compare* 1st Hamilton Decl., *with* Order at 6–7, and Plaintiff's reply neither introduced any conflicting evidence nor objected to Target's evidence, beyond contending that "Target's argument that Eclipse and Intervenor agreed to be bound by

whatever apportionment K-Mart and Target agreed to pay . . . is simply and utterly absurd." ECF No. 238 at 3; *see also generally id.* Accordingly, the Court did not err in ruling on Plaintiff's motion to enforce the Settlement Agreement without holding an evidentiary hearing. *See* Order at 6 n.1 (citing *Trs. of the Operating Eng'rs Pension Tr. v. Smith-Emery Co.*, No. 209CV01476CASAJWX, 2017 WL 275599, at *8 (C.D. Cal. Jan. 19) (citing *Calcor Space Facility, Inc. v. McDonnell Douglas Corp.*, 5 Fed. App'x 787, 789 (9th Cir. 2001)), *reconsideration denied*, 2017 WL 6551182 (Aug. 14, 2017), *appeal dismissed*, No. 17-55240, 2018 WL 1040497 (9th Cir. Jan. 31, 2018)).

Further, "Plaintiff['s] attempts to belatedly create a factual dispute" using facts and legal arguments previously available to Plaintiff are not proper grounds for reconsideration. *See* Opp'n at 9–10 (citing *Kona Enters.*, 229 F.3d at 890; *Sch. Dist. No. 1J, Multnomah Cty. v. AC&S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1557 & n.4 (9th Cir. 1987); *Frederic S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985)); *see also, e.g.*, *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH*, 571 F.3d 873, 880–81 (9th Cir. 2009) (affirming district court's denial of reconsideration where "new" evidence could have been presented to the district court previously); *Pierce v. Skolnik*, No. 3:10-CV-0239-ECR-VPC, 2012 WL 28839 (D. Nev. Jan. 5, 2012) (denying reconsideration based on declarations presenting previously available evidence). The Court therefore declines to reconsider its May 21, 2019 Order or to hold an evidentiary hearing based on Ms. Hamilton's untimely declaration.

The same reasoning and conclusion apply to Plaintiff's new argument that Target fraudulently induced Plaintiff into signing a Settlement Agreement that "limit[ed]" Target's liability. *See* Mot. at 9–11. Plaintiff now argues that "the original ruling is unjust and unfair" because, "[i]f in fact the suspicions set forth above are true, then it would clearly be unjust and unfair to allow Target to benefit from its essentially fraudulent ploy." *Id.* at 10. Plaintiff's "suspicions," however, are based on Plaintiff's failure to "suspect[] that [Kmart's] bankruptcy filing was imminent" and Plaintiff's speculation that "Defendants and their counsel . . . kn[e]w full well that Kmart would be filing for

bankruptcy within the short period of time between the signing of the agreement and the time for payment" and, therefore, "undoubtedly knew full well, at the time they entered into the agreement, that Kmart would not be paying any portion of the settlement." *See id.* Again, the facts and law on which Plaintiff relies were available to it to raise in its original motion and/or reply.[3] Plaintiff did not,[4] *see generally* ECF Nos. 234, 238, and these belated arguments are not a proper basis for reconsideration. The Court therefore declines to reconsider its decision that no evidentiary hearing was necessary. *See* Order at 6 n.1.

## INTERVENOR'S JOINDER

In addition to joining in Plaintiff's Motion, "Intervenor seeks to clarify certain facts material to the issues for reconsideration." Joinder at 1–2. The Court addresses those of Intervenor's arguments that are not duplicative of Plaintiff's.

First, Intervenor remarks that "the Court noted in the 'Background' Section all of the 'past-due' amounts for Plaintiff's 'legal invoices' for 'fees and costs[,' b]ut the long-overdue invoiced amounts (unpaid by Defendants' vendor Manley, not Defendants) are not the touchstones of this *quantum meruit* action," which is instead based on the reasonable value of the services rendered. *See id.* at 2 (emphasis in original) (quoting ECF No. 193 at 9) (citing ECF No. 48 at 18–21). Intervenor therefore contends that "the value of this *quantum meruit* claim rests on the expert [Frederick S.] Berretta's analysis, not Plaintiff's invoices to Manley at a time before the underlying litigation had been successfully defended." *Id.* at 3; *see also generally* ECF No. 157-3. This argument is not only untimely,

---

[3] Plaintiff also argues that "Target does not deny that it prepared the language upon which the Court based its decision." Reply at 8; *see also* Mot. at 9 ("The language in the paragraph on which the Court relies was provided by Target's attorney."). The evidence properly before the Court does not support Plaintiff's claim. In his original declaration, Mr. Letchinger provided the Court with Ms. Hamilton's original draft of the Settlement Agreement. *See generally* ECF No. 236-4. That draft includes the exact language on which the Court relied: "Target and Kmart agree to pay Eclipse and Lobbin a collective sum of $425,000.00 . . . . [¶] Eclipse and Lobbin recognize that *Target and Kmart will each pay a portion of the Settlement Payment*." *Id.* § 3 (emphasis added).

[4] In fact, Plaintiff originally argued that, "*[a]fter entering into the Settlement Agreement*, Target became aware that Kmart was not remitting any payment under the Settlement Agreement by reason of its bankruptcy." *See* ECF No. 234 at 2 (emphasis added).

11

but also immaterial. Not only did Mr. Berretta himself acknowledge that the outstanding invoices were relevant to the "value of the legal services provided," *see* ECF No. 157-3 ¶ 36, but many courts have recognized that invoiced amounts are relevant to a determination of the reasonable value of work performed, *see, e.g.*, *Evans-Freke v. Showcase Contracting Corp.*, 85 A.D.3d 961, 963 (N.Y. App. Div. 2011) (collecting cases); *Curators of Univ. of Mo. ex rel. Shell-Con, Inc. v. Neb. Prestressed Concrete Co.*, 526 S.W.2d 903, 910 (Mo. App. 1975) (same). At any rate, the pertinent point is that Defendants' counsel, Mr. Letchinger, attested that the invoiced amounts were discussed in negotiating the Settlement Agreement, *see* Order at 6 (citing ECF No. 236-1 ("Letchinger Decl.") ¶ 3), a fact that neither Plaintiff nor Intervenor contested in the original briefing.

Second, Intervenor challenges the Court's "conclusion that the Settlement Agreement 'calls for two settlement payments,'" which "does not match the language used." Joinder at 3. Intervenor appears to be referring to the Court's recitation of *Target's* argument "that the settlement agreement clearly calls for two settlement payments, one from Target and one from Kmart, to each of Plaintiff and Intervenor." Order at 4–5 (citing ECF No. 236 at 6–9); *see also* ECF No. 236 at 6 ("The Settlement Agreement Calls For Two Settlement Payments, One From Each Defendant.") (emphasis omitted). The Court, however, never concluded that the Settlement Agreement *required* Kmart and Target each to make a payment; rather, the Court concluded that "the plain language of [Paragraph 3 of the Settlement Agreement] does not impose joint and several liability on Target and Kmart." *See* Order at 5. Indeed, the Settlement Agreement is clear that "Eclipse and Lobbin recognize that Target and Kmart will each pay a portion of the Settlement Payment and Eclipse and Lobbin *may receive their payments in one or more checks/wire payments from Target and/or Kmart*." Settlement Agreement § 3. It is therefore conceivable that Target and Kmart could have made two, three, or four settlement payments to Plaintiff and Intervenor; the main point is that the Settlement Agreement does not impose joint and several liability because each Defendant agreed to pay only a portion of the settlement. *See id.*

Third and finally, Intervenor contends that the discussions between Mr. Letchinger and Ms. Hamilton relayed by Mr. Letchinger's declaration do not involve Intervenor and, therefore, "should have no effect on Intervenor's rights to collect in full from Target under the Settlement Agreement." Joinder at 4–5 (citing *Sun Pac. Farming Coop., Inc. v. Sun World Int'l*, No. 01-6102, 2006 WL 1716206, at *10 (E.D. Cal. Jun. 16, 2006), *aff'd in relevant part*, 277 Fed. App'x 727 (9th Cir. 2008)). The Court reiterates that it concluded that the plain language of the Settlement Agreement—which Intervenor accepted and signed—provided that he "recognize[d] that Target and Kmart will *each* pay a *portion* of the Settlement Payment." Settlement Agreement § 3. Intervenor therefore explicitly agreed that Target and Kmart were not jointly and severally liable.

To the extent any ambiguity would require consideration of the external evidence, however, Mr. Letchinger's declaration—which Intervenor did not previously refute—contravenes Intervenor's claim. Specifically, on June 28, 2018, before Intervenor had entered into the settlement negotiations, Mr. Letchinger sent Ms. Hamilton an email outlining their agreement in principle, including that "Target and Kmart agree to pay $425,000 (this will be two separate payments by Target and Kmart in amounts to be determined by them, such payments equaling $425,000)." *See* ECF No. 236-2 at 1. "In a subsequent conversation with Ms. Hamilton later in the evening on July 6, 2018, Ms. Hamilton confirmed that Mr. Lobbin had agreed to the settlement *as summarized in our email agreement*, except for one condition – Mr. Lobbin insisted that Kmart and Target pay him directly." ECF No. 236-1 ¶ 6 (emphasis added). Intervenor introduces no evidence that he voiced any understanding to the contrary and, as Intervenor himself recognizes, *see* Joinder at 5 (quoting *Sun Pac.*, 2016 WL 1716206, at *10), "[a] party's unexpressed intentions regarding the effect of a contract are irrelevant to interpretation of the contract." Consequently, to the extent that external evidence was even necessary to construe the Settlement Agreement, Mr. Letchinger's heretofore unrefuted declaration established that Mr. Lobbin agreed to "two separate payments by Target and Kmart in

///

1 amounts to be determined by them, such payments equaling $425,000." This fact alone
2 "supports Target's interpretation of the provision at issue." *See* Order at 6.

The Court therefore declines to reconsider its Order on any of the additional bases offered by Intervenor's Joinder.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Plaintiff and Intervenor's Motion (ECF No. 242) and declines to reconsider its May 21, 2019 Order. To the extent Plaintiff and Intervenor maintain that the Court "committed clear error" or that its Order "was manifestly unjust," *see* Mot. at 1 (citing *Farr*, 2018 WL 1156445, at *1), they may appeal to the Ninth Circuit (as repeatedly threatened in the Motion, *see* Mot. at 2, 4, 6). In the interim, Defendant Target **MAY RENEW** its motion for attorneys' fees (ECF No. 241), which the Court previously denied without prejudice as moot pending resolution of the instant Motion. *See* ECF No. 244.

**IT IS SO ORDERED.**

Dated: February 10, 2020

Hon. Janis L. Sammartino
United States District Judge