# SML Avvocati P.C.

San Diego|Los Angeles|Orange County
T: 949.636.1391
E: sml@smlavvocati.com

September 2, 2021

**VIA Hand Delivery**

John Morrill, Clerk of Court
**United States District Court**
Southern District of California
James M. Carter and Judith N. Keep United States Courthouse
Office of the Clerk of Court
333 West Broadway, Suite 420
San Diego, California 92101-3806

Re:   *In re The Eclipse Group LLP v. Target Corporation et al.*
Case No. 3:15-cv-01411-JLS-BLM

Dear Mr. Morrill:

Thank you for your August 3, 2021 letter, filed in the above-referenced action as ECF No. 270. *See also* ECF No. 271 (filed August 6, 2021). Your letter "invite[s] [the parties] to respond to Judge Sammartino's disclosure of a conflict in this case." Specifically, you advised that "while she presided over the case a family member owned stock in Target Corporation," which financial interest "would have required recusal under the Code of Conduct for United States Judges." *See* 28 U.S.C. § 455(b)(4) (requiring recusal for "a financial interest . . . in a party to the proceeding"); *see also* 28 U.S.C. § 455(a) (requiring recusal whenever "impartiality might reasonably be questioned"). This response is on behalf of myself as Plaintiff (specifically, Intervenor-Plaintiff) in the action.

First, the timing of the relevant circumstances of the conflict requiring a recusal remain a bit unclear. Concerning the representation that "Judge Sammartino was not aware of this financial interest at the time the case was pending," actually the case remains pending today. Specifically, an appeal is now

1

proceeding at the Ninth Circuit (pending as Case No. 20-55206), and ultimately the case may be remanded to this Court for further proceedings. Concerning the representation that the financial interest was discovered only "after disposition of the case," it is unclear whether "disposition" means (a) the Court's September 28, 2018 Order of Dismissal (*see* ECF No. 228); (b) the Court's May 21, 2019 Order re Contempt (*see* ECF No. 240); (c) the Court's June 23, 2020 Order (*see* ECF No. 257); (d) the Court's April 5, 2021 Order (*see* ECF No. 269), or (e) some other event?[1] But regardless of the timing of the awareness of the financial interest and conflict, 28 U.S.C. § 455(d)(1) confirms that "proceeding" also "includes . . . appellate review, or other stages of litigation." Therefore, the case remains pending, there has not yet been a final disposition, and recusal still appears to be required under 28 U.S.C. § 455(b)(4). *See U.S. v. State of Washington*, 98 F.3d 1159, 1164 (9th Cir. 1996) (recusal mandatory "because financial conflict is an enumerated ground for disqualification under section 455").[2]

Not only does the statutory disqualification under 28 U.S.C. § 455(b)(4) require recusal, but we believe the relevant considerations also require setting aside the Court's prior substantive rulings. *See State of Washington*, 98 F.3d at 1164

---

[1] The action was filed and assigned to Judge Sammartino long ago, in 2015. Under 28 U.S.C. § 455(c), "A judge should inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." Therefore, it is unclear why "Judge Sammartino was not aware of this financial interest at the time the case was pending," which time period spanned 6+ years since June 2015, and why the conflict only "was brought to her attention [recently]"?

[2] Advisory Opinion No. 71 advises only that "a court (without the disqualified judge) will decide the legal consequence, if any, arising from the participation of the disqualified judge in the entered decision." Importantly, it also states:

> Th[is] question encompasses ***areas beyond this Committee's authority***. Determination of what circumstances may taint a decision already entered is a judicial function, ***not that of a committee*** established to advise on ethical standards of the conduct of judges. . . . The Committee notes that recusal decisions are also governed by the recusal statutes, 28 U.S.C. §§ 455 and 144, and the case law interpreting them. [T]he Committee on Codes of Conduct is not authorized to render advisory opinions interpreting §§ 455 and 144 . . . .

Advisory Opinion No. 71 (emphasis added).

("Rule 60(b) authorizes setting aside a judgment [] for reasons that would have prevented entry of the judgment in the first place, ***had the reasons been known at the time judgment was entered***.");[3] *see also Clark v. Kapila*, 612 B.R. 808, 816-20 (S.D. Fla. 2019). The court in *Clark*, for example, ruled that a missed mandatory disqualification under 28 U.S.C. § 455 required setting aside the district court's judgment and returning the case "to the summary judgment phase for further proceedings." *Id.* at 820. As the court reasoned in relevant part:

> The purpose of section 455(a), as the Supreme Court of the United States explained, is to "promote confidence in the judiciary by ***avoiding even the appearance of impropriety*** whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865, 108 S. Ct. 2194, 100 L.Ed.2d 855 (1988). "Inherent in § 455(a)'s requirement that a judge disqualify himself if his impartiality might reasonably be questioned is the principle that our system of 'justice must satisfy the appearance of justice.'" *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1523 (11th Cir. 1988) (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 99 L.Ed. 11 (1954)). . . .
>
> . . .
>
> Having found that Judge Olson should have recused himself pursuant to section 455(a) [but did not], the Court must decide the appropriate remedy. The Supreme Court has set forth three factors to consider in determining whether a judgment should be vacated for a violation of section 455(a): "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194.
>
> . . .
>
> The Court is not alone in finding that the appearance of impropriety and the seriousness of the violation of section 455(a) mandate near-total vacatur of the trial proceedings. Judge Altonaga

---

[3] As your letter states, "Any response will be considered by another judge of this court without the participation of Judge Sammartino." ECF No. 270 at 2; *see also Ringgold v. Brown*, No. 12-717, at *7 (E.D. Cal. May 18, 2017) ("The Supreme Court has determined that Rule 60(b)(6), in particular, may provide an appropriate remedy for such violations [of 28 U.S.C. § 455].") (citing *Liljeberg*, 486 U.S. at 863-64). Rule 60(c) allows a motion "within a reasonable time" after discovery of the warranting circumstances.

found similarly in her related appeal. Just as in that case, although "it is burdensome to appellee[] for [the Court] to require a new trial . . . it is not unfair." *Chase Manhattan Bank [v. Affiliated FM Insurance]*, 343 F.3d [120, 132 (2d Cir. 2003)]. The Court recognizes that the adversary proceeding below has unfortunately spanned more than ten years . . . .

The Court agrees with Judge Altonaga that ***the most conservative course of action is to revert the proceedings back to the summary judgment phase*** . . . . In this way, Appellant and Appellee need not return all the way to the starting blocks when resuming litigation.

The second factor the Court must analyze is whether the risk of denial of relief will produce injustice in other cases. "This factor weighs in favor of vacating the judgment when so doing would 'encourag[e] a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.'" *[U.S. v.] Cerceda*, 172 F.3d [806], at 815 [(11th Cir. 1999)] (quoting *Liljeberg*, 486 U.S. at 868, 108 S. Ct. 2194). . . . The final factor requires an analysis of the risk undermining the public's confidence in the judicial process. For all the reasons set forth above, ***a failure to vacate the proceedings below will likely jeopardize the public's trust and confidence in the judiciary***.

"An independent, fair and impartial judiciary is indispensable to our system of justice." MODEL CODE OF JUDICIAL CONDUCT Preamble (2011). So is avoiding the appearance of partiality. . . . Public trust and confidence in the judiciary depend upon the appearance of integrity and independence of judges, ***which must be carefully safeguarded***. Only reversal and remand in this case will restore that appearance.

*Clark*, 612 B.R. at 816-20 (emphasis added); *see also Liljeberg*, 486 U.S. at 847 (affirming decision to vacate judgment under Rule 60(b) in the interests of justice due to judge's failure to recuse himself in violation of 28 U.S.C. § 455); *Preston v. U.S.*, 923 F.2d 731, 735 (9th Cir. 1991) ("There is no way [] to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge.").

In another case with similar circumstances—*Demodulation, Inc. v. United States*, 114 Fed. Cl. 655, 657 (2014)—the court confirmed first, "Nothing . . .

4

suggests that Judge Braden's [conflict] influenced her rulings in the two substantive orders that she issued prior to disqualification." *Id.* at 657. Nevertheless, the court ruled:

> [I]f the orders of the now-recused judge were allowed to stand, ***Plaintiff could one day wonder whether the outcome of the case was influenced by a judge who later recused herself from the case***. Given the Federal Circuit's strict application of disqualification requirements in *Shell Oil, supra*, Plaintiff's counsel raises the specter of incurring the time and expense to pursue this case to completion, only to have the appellate court rule that the case must begin anew. ***Thus, the safest course is to vacate Judge Braden's substantive orders*** because "justice must satisfy the appearance of justice." *Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194. ***So that no questions remain about the appearance of Judge Braden's partiality, as unlikely as that possibility seems***, the Court chooses to start with a clean slate. Accordingly, Plaintiffs motion to vacate is GRANTED. As the Court discussed with counsel at the close of oral argument, Plaintiff shall file forthwith its third amended complaint, after which Defendant shall respond to the complaint with an answer or motion as it deems appropriate.

*Demodulation*, 114 Fed. Cl. at 657 (emphasis added). In the cited *Shell Oil* case, the Federal Circuit reasoned similarly as follows:

> Because the stock was not divested, recusal is mandatory under § 455(b)(4), and cannot be waived. . . .
>
> Although the judge explained that he did not discover the interest until he was entering final judgment, . . . [it] pre-dates his September 28, 2009 decision denying the government's motion for reconsideration with respect to damages, as well as his October 30, 2009 entry of final judgment. Accordingly, ***the judge should have recused himself as of May 15, 2009 and should have taken no further action*** other than the ministerial act of transferring the case to another judge. . . .
>
> . . .
>
> . . . We emphasize that there is neither an allegation nor suggestion that the judge was unduly influenced by his wife's financial interest, which no one argues was substantial. The statute

does not require as much—it simply requires recusal whenever financial conflicts of interest exist, regardless of whether those conflicts affect the outcome of the case. Because the judge was required to recuse himself under § 455(b)(4), his failure to do so violated the statute.

. . .

Here, the trial court's decision to reinstate its judgment with respect to Shell Oil and Arco may have a prejudicial effect on the now-severed litigation of Texaco and Union Oil's claims. Indeed, given the identity of issues involved, the parties do not dispute that a decision in this case will control the outcome in the severed case involving Texaco and Union Oil. *See* Oral Argument at 16:20 (noting that the Texaco case is stayed pending resolution of this case, and that this appeal "will be dispositive in that case, most probably"). . . .

In addition to the risk of injustice to the parties, we find that, under these circumstances, there is also a "risk of undermining the public's confidence in the judicial process." *See Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194. This is particularly true given that, several months after disclosing a financial interest in "Chevron Texaco Stock," the trial judge: (1) denied the government's motion for reconsideration; and (2) entered final judgment in excess of $86 million in favor of the Oil Companies.

*Shell Oil Co. v. United States*, 672 F.3d 1283, 1288-94 (Fed. Cir. 2012) (emphasis added).

In this case, we have serious concerns about an "appearance of impropriety." Concerning "the risk of injustice to the parties," in several key rulings the Court strangely has misapplied basic, black-letter principles and presumptions of contract law (*see, e.g.*, ECF Nos. 240 and 248),[4] and assessed monetary penalties which we believe were unfair, disproportionate and unnecessarily punitive. *See, e.g.*, ECF Nos. 127 at 10, 146, 257, 262 and 269. The key rulings have been strange for many reasons, not the least of which is that the Court's reasoning has consistently strained to favor "Goliath" (here, Defendant Target Corporation) rather than our

---

[4] As Judge Kleinfeld noted on appeal, "The contract plainly requires Target [to be liable for the alleged breach]."

side of the case (*i.e.*, "David").[5]   Additionally, as in *Shell Oil*, this Court's prior decisions tainted with conflict "may have a prejudicial effect" on future issues, both on remand and potentially in collateral litigation asserting breach of contract and fraud in the inducement, among other claims.  Because this Court's prior decision construed the settlement agreement at issue, it may be asserted as having preclusive effect in future proceedings over several related but unresolved issues. For that reason also, the Court's substantive decisions should be set aside because of the disqualification and recusal under 28 U.S.C. § 455.

Another important consideration here is that an "appearance of impropriety" most often results from the scales of justice tipping in apparent favor of "Goliath" over "David" (as in this case), ***not the other way around***.  *See, e.g., Time Magazine*, "How the Supreme Court Favors the Rich and Powerful" (March 3, 2020).  To state this point another way, the "guardrails" in our justice system should be especially strong (and should be applied especially conservatively) for protecting individuals, not for protecting behemoth corporations like Target.[6]

Moreover, another unique, critical fact here is that for well over a decade and for long into the future, this Court is my "home" district for our firm's busy patent and intellectual property litigation practice.  At any time, we have many cases pending in this Court, including some assigned to Judge Sammartino.  *See, e.g.*, Case No. 16-875.  Also, I have longstanding friendships with a law clerk and some of the judges,[7] I recently completed a 3-year term on the Board of the San Diego Chapter of the Federal Bar Association, and I plan to continue my active litigation practice in this Court for many years to come.  These circumstances, in my view, require even more "careful safeguards" to protect the integrity of the Court and err on the side of granting the requested relief in order to purge the conflict, the disqualification and the recusal under 28 U.S.C. § 455.  *See Clark*, 612 B.R. at 820 ("Public trust and confidence in the judiciary depend upon the

---

[5] As Judge Callahan noted in oral argument on appeal, as a practical matter it was "odd" that Target would spend far more money to litigate this case than the amount at issue: "There is a real world side to this," she noted.

[6] Target Corporation has a market cap well in excess of $100 billion.

[7] For example, a career law clerk at the Court is a close family friend (and godmother to my daughter), which has required her recusal on several of our cases assigned to her judge.  Also, Judge Battaglia joined me and others in sponsoring the San Diego Italian-American Bar Association, and Judge Lopez served with me on the Board of the Federal Bar Association.

appearance of integrity and independence of judges, ***which must be carefully safeguarded***.") (emphasis added).

For these many reasons, the circumstances here support at least an "appearance of impropriety" and "the risk of injustice" to our side of this case— *i.e.*, Plaintiffs (including me as Intervenor-Plaintiff). Concerning "the risk that the denial of relief will produce injustice in other cases," here as in *Clark*, "This factor weighs in favor of vacating the judgment when so doing would encourage a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Id.* at 20. Concerning "the risk of undermining the public's confidence in the judicial process," here as in *Shell Oil*, the rulings causing an "appearance of impropriety" were consistently in favor of the side of the case from which the conflict and financial interest occurred. *See Shell Oil*, 672 F.3d at 1294 (noting a "final judgment in excess of $86 million in favor of the Oil Companies").

We request permission to formally brief and be heard on these issues, and for the Court to conduct an independent review of our requested relief. In the meantime, please let us know if you have any questions.

Sincerely,

**SML Avvocati P.C.**

/s/ Stephen M. Lobbin

*Stephen M. Lobbin*

8