Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel:   949.636.1391

Attorneys for Intervenor-Plaintiff

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **The Eclipse Group LLP**, a California limited-liability partnership,<br><br>Plaintiff,<br><br>v.<br><br>**Target Corporation**, a Minnesota corporation, et al.,<br><br>Defendants. | Case No. 3:15-cv-01411-TWR-BLM<br><br>**PLAINTIFFS' MOTION TO VACATE DISMISSAL AND SUBSEQUENT RULINGS FOLLOWING RECUSAL; MEMORANDUM IN SUPPORT (Fed. R. Civ. P. 60(b)(6))**<br><br>Date:  March 2, 2022<br>Time:  1:30 p.m.<br>Ctrm:  3A<br><br>Honorable Todd W. Robinson |

PLEASE TAKE NOTICE that on March 2, 2022 before the Honorable Todd W. Robinson, Plaintiffs (including Intervenor-Plaintiff) respectfully will move pursuant to Fed. R. Civ. P. 60(b)(6) to vacate the Court's dismissal order (*see* ECF No. 228) and other substantive rulings be vacated (including but not limited to ECF Nos. 127 at 10, 146, 240, 248, 257, 262 and 269), and return this action to its status as of June 12, 2018, when the Court set a "schedule of pretrial dates and deadlines." *See* ECF No. 197.  At a minimum, before any final decision on the appropriate remedy following recusal, Plaintiffs request appropriate disclosure and

1

discovery of the circumstances surrounding the financial interest conflict, in order to faithfully assess the key issues justifying the requested relief.

## MEMORANDUM IN SUPPORT

This Motion follows this Court's notice of a financial interest (*see* ECF Nos. 270-71), Intervenor-Plaintiff's request for recusal (*see* ECF No. 272), the Court's Order of recusal and transfer (*see* ECF No. 273) and its subsequent Order "direct[ing] Intervenor-Plaintiff to . . . identif[y] which orders, if any, Intervenor-Plaintiff believes require de novo review by the Court."  ECF No. 274 at 1.[1] Because any reasonable person would conclude that Judge Sammartino was (or should have been)[2] aware of the disqualifying financial interest (*i.e.*, owning stock in Defendant Target) during the ***six-year*** pendency of this action, and because the disqualifying financial interest "***appears*** to have had the ***potential*** of affecting the judge's rulings," Plaintiffs request that the Court's dismissal order (*see* ECF No. 228) and other substantive rulings be vacated (including but not limited to ECF Nos. 127 at 10, 146, 240, 248, 257, 262 and 269).  *See* Fed. R. Civ. P. 60(b)(6). Consequently, this action should be returned to its status as of June 12, 2018, when the Court set a "schedule of pretrial dates and deadlines."  *See* ECF No. 197.  At a minimum, before any final decision on the appropriate remedy following recusal, Plaintiffs request appropriate disclosure and discovery of the circumstances surrounding the financial interest conflict, in order to faithfully assess the key issues justifying the requested relief.

---

[1] Pursuant to CivLR 7.1(j)(2), Plaintiff The Eclipse Group LLP hereby joins this Motion.

[2] As noted previously (*see* ECF No. 272 at 2), this action was filed and assigned to Judge Sammartino long ago, in 2015.  Under 28 U.S.C. § 455(c), "A judge should inform [her]self about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in [her] household."  Therefore, it is unclear why (as represented previously) "Judge Sammartino was not aware of this financial interest at the time the case was pending," which time period spanned 6+ years since June 2015, and why the conflict only "was brought to her attention [recently]"?  *See* ECF Nos. 270-71.

## Legal Standard

Because of recent, nationwide exposure of widespread financial interest conflicts requiring recusal—in particular concerning Judge Sammartino—this Court recently has addressed the very issue presented here. Specifically, as disclosed in a September 28, 2021 *Wall Street Journal* article, "Judge Sammartino's 54 conflicts were the second-most recusal violations" among all federal judges nationwide. *See* Ex. A ("131 Federal Judges Broke the Law by Hearing Cases Where They Had a Financial Interest"); *see also* Ex. B (subsequent news articles). These significant revelations undoubtedly have damaged the public's trust in the federal judiciary, requiring a stern, conservative remedy and course correction. As one witness stated in a Congressional hearing just three days ago, "The primary source of the judiciary's authority and power **is its reputation**." *See Daily Journal*, "Congress considers stricter judge disclosure law" (October 27, 2021) (emphasis added). As the Supreme Court has reminded similarly, "[J]ustice must satisfy **the appearance of justice**." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) (emphasis added).

Just a few weeks ago, former Chief Judge Moskowitz in *Driscoll v. Metlife Insurance* examined another case (like this one) in which Judge Sammartino ruled in favor of Defendant Metlife while at the same time owning its stock (but failing to recuse). *See* No. 3:15-cv-01162-BTM-LL (S.D. Cal. Oct. 8, 2021) (Ex. C herewith). As Judge Moskowitz explained:

> [Plaintiff] Driscoll seeks disclosure of the circumstances surrounding the Metlife, Inc. stock interest, appointment of counsel, and vacation of the judgment.
>
> . . .
>
> Federal Rule of Civil Procedure 60(b)(6) is the proper avenue to challenge a prior decision based on the subsequent discovery of facts requiring the judge's disqualification under [28 U.S.C.] § 455. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988).
>
> . . .

> The right course under § 455(b) as under § 455(a) is to proceed on a case by case basis, determining the existence of disqualifying knowledge at the time the judge sat, ***in the way that a state of mind is normally determined, from inspection of all the circumstances***. . . . If the circumstances are such that a reasonable person would conclude that the judge had not forgotten but continued to know, his rulings must be vacated. . . . [W]here the financial interest is substantial ***or appears to have had the potential of affecting the judge's rulings***, the interest will be one that reasonable persons would conclude the judge was aware of, whatever his pretense of ignorance. ***The judge's rulings will then be invalidated***.

*Id.* at *2-3 (emphasis added) (internal citation and quotation omitted).

As Judge Moskowitz continued, and ultimately determined:

> [T]he question before the Court is whether a reasonable person would conclude from the circumstances that Judge Sammartino knew of the disqualifying family member's stock holding in Metlife during the time she presided over the case. . . . Thus, examination of Judge Sammartino's Financial Disclosure Reports ***and obtaining a full statement as to when she first learned of the financial interest . . . may be necessary in this case.  Furthermore, since Judge Sammartino has denied that she knew of the stock holding during the time she presided over the case***, the judge making the determination would necessarily have to make a finding as to her credibility.
>
> Section 455(a) requires the undersigned judge to recuse from deciding that question if a reasonable person with knowledge of all the facts would conclude that my impartiality may be questioned.  The Court finds that to be the case here.
>
> The judges on our court are close and we maintain a friendship with each other.  We meet on most Mondays to discuss court business.  We socialize at least once a year with our spouses.  Indeed, most of the district judges and spouses were together for a dinner about six weeks ago celebrating this judge's assumption of senior status.  Before the pandemic, the district judges and our spouses would get together for a yearly beach party.  Thus, ***the relationship between the district court judges and spouses is sufficiently close that a reasonable person would question whether the undersigned judge could impartially determine Judge Sammartino's credibility or determine what discovery to order in as much as that would***

> *implicate her privacy*. These are the very issues that I would be called upon to decide. **Therefore, I find that I must recuse from deciding Driscoll's motion**.
>
> The reasons for recusal on the present motion do not apply to the resolution of the underlying ERISA dispute if the judgment is vacated. However, in *United States v. Feldman*, 983 F.2d 144 (9th Cir. 1992), the Ninth Circuit held that the court cannot parse a case into those issues in which the court has a disqualifying conflict and those in which it does not. If there is a § 455 basis for disqualification, the judge must recuse from the entire case. *Id.* at 145 ("when a judge determines that recusal is appropriate it is not within his discretion to recuse by subject matter or only as to certain issues and not others"). Thus, **having held that I must recuse on the present motion, I must recuse from the entire case**.

*Id.* at *3-5 (emphasis added).

Given the wholesale recusal which Judge Moskowitz determined in *Driscoll* is required, and given that the procedural posture of this action is indistinguishable, Plaintiffs here are unsure whether this Court is in an appropriately independent position to address this Motion. Nevertheless, the particular circumstances of this proceeding (as discussed *infra*) certainly justify the requested relief—requiring a re-set for a trial on the merits of Plaintiffs' claims—at least because (a) Judge Sammartino's ownership of Target stock is a financial interest "that reasonable persons would conclude the judge was aware of, whatever [her] pretense of ignorance," and (b) the interest "***appears*** to have had the ***potential*** of affecting the judge's rulings." In such circumstances, as Judge Moskowitz explained in *Driscoll*, "The judge's rulings [should] be invalidated."

Other cases are in accord. *See State of Washington*, 98 F.3d at 1164 ("Rule 60(b) authorizes setting aside a judgment [] for reasons that would have prevented entry of the judgment in the first place, **had the reasons been known at the time judgment was entered**."); *see also Clark v. Kapila*, 612 B.R. 808, 816-20 (S.D. Fla. 2019). The court in *Clark*, for example, ruled that a missed mandatory

disqualification under 28 U.S.C. § 455 required setting aside the district court's judgment and returning the case "to the summary judgment phase for further proceedings." *Id.* at 820. As the court reasoned in relevant part:

> The purpose of section 455(a), as the Supreme Court of the United States explained, is to "promote confidence in the judiciary by ***avoiding even the appearance of impropriety*** whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865, 108 S. Ct. 2194, 100 L.Ed.2d 855 (1988). "Inherent in § 455(a)'s requirement that a judge disqualify himself if his impartiality might reasonably be questioned is the principle that our system of 'justice must satisfy the appearance of justice.'" *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1523 (11th Cir. 1988) (quoting *Offutt v. United States*, 348 U.S. 11, 14, 75 S. Ct. 11, 99 L. Ed. 11 (1954)). . . .
>
> . . .
>
> Having found that Judge Olson should have recused himself pursuant to section 455(a) [but did not], the Court must decide the appropriate remedy. The Supreme Court has set forth three factors to consider in determining whether a judgment should be vacated for a violation of section 455(a): "[1] the risk of injustice to the parties in the particular case, [2] the risk that the denial of relief will produce injustice in other cases, and [3] the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194.
>
> . . .
>
> The Court is not alone in finding that the appearance of impropriety and the seriousness of the violation of section 455(a) mandate near-total vacatur of the trial proceedings. Judge Altonaga found similarly in her related appeal. Just as in that case, although "it is burdensome to appellee[] for [the Court] to require a new trial . . . it is not unfair." *Chase Manhattan Bank [v. Affiliated FM Insurance]*, 343 F.3d [120, 132 (2d Cir. 2003)]. The Court recognizes that the adversary proceeding below has unfortunately spanned more than ten years . . . .
>
> The Court agrees with Judge Altonaga that ***the most conservative course of action is to revert the proceedings back to the summary judgment phase*** . . . . In this way, Appellant and Appellee need not return all the way to the starting blocks when resuming litigation.

> The second factor the Court must analyze is whether the risk of denial of relief will produce injustice in other cases. "This factor weighs in favor of vacating the judgment when so doing would 'encourag[e] a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered.'" *[U.S. v.] Cerceda*, 172 F.3d [806], at 815 [(11th Cir. 1999)] (quoting *Liljeberg*, 486 U.S. at 868, 108 S. Ct. 2194). . . . The final factor requires an analysis of the risk undermining the public's confidence in the judicial process. For all the reasons set forth above, ***a failure to vacate the proceedings below will likely jeopardize the public's trust and confidence in the judiciary***.
>
> "An independent, fair and impartial judiciary is indispensable to our system of justice." MODEL CODE OF JUDICIAL CONDUCT Preamble (2011). So is avoiding the appearance of partiality. . . . Public trust and confidence in the judiciary depend upon the appearance of integrity and independence of judges, ***which must be carefully safeguarded***. Only reversal and remand in this case will restore that appearance.

*Clark*, 612 B.R. at 816-20 (emphasis added); *see also Liljeberg*, 486 U.S. at 847 (affirming decision to vacate judgment under Rule 60(b) in the interests of justice due to judge's failure to recuse himself in violation of 28 U.S.C. § 455); *Preston v. U.S.*, 923 F.2d 731, 735 (9th Cir. 1991) ("There is no way [] to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge.").

In another case with similar circumstances—*Demodulation, Inc. v. United States*, 114 Fed. Cl. 655, 657 (2014)—the court confirmed first, "Nothing . . . suggests that Judge Braden's [conflict] influenced her rulings in the two substantive orders that she issued prior to disqualification." *Id.* at 657. Nevertheless, the court ruled:

> [I]f the orders of the now-recused judge were allowed to stand, ***Plaintiff could one day wonder whether the outcome of the case was influenced by a judge who later recused herself from the case***. Given the Federal Circuit's strict application of disqualification requirements in *Shell Oil, supra*, Plaintiff's counsel raises the specter

of incurring the time and expense to pursue this case to completion, only to have the appellate court rule that the case must begin anew. ***Thus, the safest course is to vacate Judge Braden's substantive orders*** because "justice must satisfy the appearance of justice." *Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194. ***So that no questions remain about the appearance of Judge Braden's partiality, as unlikely as that possibility seems***, the Court chooses to start with a clean slate. Accordingly, Plaintiffs motion to vacate is GRANTED.

*Demodulation*, 114 Fed. Cl. at 657 (emphasis added).

In the cited *Shell Oil* case, the Federal Circuit reasoned similarly as follows:

> Because the stock was not divested, recusal is mandatory under § 455(b)(4), and cannot be waived. . . .
>
> Although the judge explained that he did not discover the interest until he was entering final judgment, . . . [it] pre-dates his September 28, 2009 decision denying the government's motion for reconsideration with respect to damages, as well as his October 30, 2009 entry of final judgment. Accordingly, *the judge should have recused himself as of May 15, 2009 and should have taken no further action* other than the ministerial act of transferring the case to another judge. . . .
>
> . . .
>
> . . . We emphasize that there is neither an allegation nor suggestion that the judge was unduly influenced by his wife's financial interest, which no one argues was substantial. The statute does not require as much—it simply requires recusal whenever financial conflicts of interest exist, regardless of whether those conflicts affect the outcome of the case. Because the judge was required to recuse himself under § 455(b)(4), his failure to do so violated the statute.
>
> . . .
>
> Here, the trial court's decision to reinstate its judgment with respect to Shell Oil and Arco may have a prejudicial effect on the now-severed litigation of Texaco and Union Oil's claims. Indeed, given the identity of issues involved, the parties do not dispute that a decision in this case will control the outcome in the severed case involving Texaco and Union Oil. *See* Oral Argument at 16:20 (noting that the Texaco case is stayed pending resolution of this case, and that this appeal "will be dispositive in that case, most probably"). . . .

> In addition to the risk of injustice to the parties, we find that, under these circumstances, there is also a "risk of undermining the public's confidence in the judicial process." *See Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194. This is particularly true given that, several months after disclosing a financial interest in "Chevron Texaco Stock," the trial judge: (1) denied the government's motion for reconsideration; and (2) entered final judgment in excess of $86 million in favor of the Oil Companies.

*Shell Oil Co. v. United States*, 672 F.3d 1283, 1288-94 (Fed. Cir. 2012) (emphasis added).

As the above case law makes clear, and particularly in this situation following widespread negative exposure in the press of failures to recuse (including 54 instances connected to Judge Sammartino), ***any doubts*** here about the following questions should be resolved ***in favor of*** re-setting this case for a trial on the merits:

- Did the undisclosed financial interest "***appear***[] to have had the ***potential*** of affecting the judge's rulings"?

- Would the undisclosed financial interest (if disclosed) "have prevented entry of the judgment in the first place"?

- Is there a "risk of injustice" to Plaintiffs because of the undisclosed financial interest?

- Is there an ***"appearance of impropriety"*** requiring "near-total vacatur," as in *Clark*?

- Do these circumstances require "the most conservative course of action," as in *Clark*?

- Would granting relief here encourage judges "to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered," as in *Clark*?

- Would "a failure to vacate . . . likely ***jeopardize the public's trust*** and confidence in the judiciary," as in *Clark*?

- Is there any other way to restore "the appearance of integrity and independence of judges"?

- As in *Demodulation*, "[I]f the orders of the now-recused judge were allowed to stand," would Plaintiffs and/or the public be reasonable to "wonder whether the outcome of the case was influenced by a judge who later recused herself"?

- As in *Demodulation*, is "**the safest course** [] to vacate Judge [Sammartino's] substantive orders because 'justice must satisfy the appearance of justice.'"?

- As in *Demodulation*, is "a clean slate" necessary "[s]o that **no questions remain** about the appearance of Judge [Sammartino's] partiality, as unlikely as that possibility seems"?

- Is there a "risk of undermining the public's confidence in the judicial process" (as in *Shell Oil*) if this action is not re-set for a trial on the merits?

Certainly, the answer to each of these questions counsels strongly *against* doing nothing.

### Circumstances Justifying The Requested Relief

In 2012, Defendants Target and Kmart, along with others including Amazon and Toys 'R Us, engaged Plaintiffs as patent/IP litigation counsel to defend them in three related federal court actions claiming **many millions in damages** for patent infringement and false advertising (including a class action). By 2015, Plaintiffs had won all three cases for Target, Kmart and the others.[3] While Plaintiffs had agreed to a much-reduced hourly rate with their foreign vendor and indemnitor, Target and Kmart's direct attorney-client relationship with Plaintiffs was left to the time-honored equitable doctrine of *quantum meruit*. By 2015, even at the reduced hourly rate, over time the foreign vendor had "shorted" Plaintiffs to the tune of $487,637.78.

With "hat in hand" as would be any individual making a request of a Fortune 50 corporation, Intervenor-Plaintiff informed Target of the dire personal financial repercussions due to the shortfall, and asked Target to leverage its unlimited

---

[3] During the relevant time frame from 2012-2015, Intervenor-Plaintiff Lobbin was an independent, non-employee contract partner of Plaintiff The Eclipse Group, LLP, a law firm.

resources to compel payment from its own foreign vendor. Undoubtedly, Target could have chosen that easy path, likely without any financial repercussions whatsoever to itself. Target refused, however, and instead chose to fight (and fight and fight) Plaintiffs in this action filed in June 2015.

Target has fought Plaintiffs for nearly seven years, and undoubtedly for a cost equaling many multiples of the unpaid amount. For reasons Plaintiffs still cannot understand (but for "no good deed goes unpunished"), Target apparently refused to secure any payment from its foreign vendor, refused to make any payment itself, and even refused to acknowledge its own, incontrovertible *quantum meruit* liability. *See* ECF No. 48 at 19-21 (district court reminded Target of its clear *prima facie* liability for "an attorney's right to *quantum meruit* recovery for services rendered").[4] Following a denial of cross-motions for summary judgment, in 2018 Judge Sammartino set the case for pretrial and trial. *See* ECF No. 197. The trial setting prompted Target (and Kmart) to finally settle by entering the parties' August 1, 2018 Settlement Agreement, by which "Target and Kmart agree[d] to cause Eclipse and Lobbin to be paid a collective sum of $425,000.00." *See* ECF 249-1 at 6.[5] Unfortunately, because Kmart filed a bankruptcy petition within weeks of promising to pay Plaintiffs (but before paying), and because Target refused to honor its promise to pay in full, more litigation followed.

As this action proceeded, Judge Sammartino demonstrated increasing bias **against Plaintiffs**—strangely—rather than Target or Kmart or their joint counsel. On summary judgment, Judge Sammartino strained to deny Plaintiffs' straightforward request simply to confirm as a matter of law each Defendant's

---

[4] This action is for *quantum meruit* damages, not just for the amounts invoiced to Target's indemnifying vendor. Target's exposure at trial involved an examination of "the[] reasonable value" of the services rendered, which Plaintiffs' expert is prepared to testify equals as much as $30 million. *See* ECF No. 157-3 at 8.

[5] The undoubted knowledge of the imminent bankruptcy filing by Kmart and Target (via their joint counsel) supports their additional liability for promissory fraud.

liability for a *quantum meruit* recovery, and similarly strained to permit a trial on insupportable defenses. *See* ECF No. 193. In several key rulings following the Settlement Agreement, Judge Sammartino misapplied basic, black-letter principles and presumptions of contract law (*see, e.g.*, ECF Nos. 240 and 248),[6] and assessed monetary penalties against Plaintiffs which were unfair, disproportionate and improperly punitive. *See, e.g.*, ECF Nos. 127 at 10, 146, 257, 262 and 269. The key rulings have been strange for many reasons, not the least of which is that the Court's reasoning has consistently strained to favor "Goliath" (here, Defendant Target) rather than our side of the case (*i.e.*, "David").[7] Additionally, as in *Shell Oil*, this Court's prior decisions tainted with conflict "may have a prejudicial effect" on future issues, both on remand and potentially in collateral litigation asserting breach of contract and promissory fraud, among other claims. Also, because this Court's prior decision construed the Settlement Agreement at issue, it may be asserted as having preclusive effect in future proceedings over several related but unresolved issues. For that reason also, the Court's substantive decisions should be set aside because of the disqualification and recusal under 28 U.S.C. § 455.

Another important consideration here is that an "appearance of impropriety" most often results from the scales of justice tipping in apparent favor of "Goliath" over "David" (as in this case), **not the other way around**. *See, e.g., Time Magazine*, "How the Supreme Court Favors the Rich and Powerful" (March 3, 2020). To state this point another way, the "guardrails" in our justice system should be especially strong (and should be applied especially conservatively) for

---

[6] As Judge Kleinfeld noted on appeal, "The contract plainly requires Target [to be liable for breach of the Settlement Agreement]." *See* ECF No. 276 at 10.

[7] As Judge Callahan noted in oral argument on appeal, as a practical matter it was "odd" that Target would spend far more money to litigate this case than the amount at issue: "There is a real world side to this," she noted.

protecting individuals, not for protecting behemoth corporations like Target.[8] Another unique, critical fact here is that for well over a decade and for long into the future, this Court is Intervenor-Plaintiff's "home" district for our firm's busy patent and intellectual property litigation practice.  At any time, we have many cases pending in this Court, including some assigned to Judge Sammartino.  *See, e.g.*, Case No. 16-875.  Also, Intervenor-Plaintiff has longstanding friendships with a career law clerk and some of the judges,[9] recently completed a 3-year term on the Board of the San Diego Chapter of the Federal Bar Association, and plans to continue an active litigation practice in this Court for many years to come.  These circumstances require even more "careful safeguards" to protect the integrity of the Court and err on the side of granting the requested relief in order to purge the conflict, the disqualification and the recusal under 28 U.S.C. § 455.  *See Clark*, 612 B.R. at 820 ("Public trust and confidence in the judiciary depend upon the appearance of integrity and independence of judges, ***which must be carefully safeguarded***.") (emphasis added).

For these many reasons, the circumstances here support at least the conclusion of an "appearance of impropriety" and "the risk of injustice" to our side of this case—*i.e.*, Plaintiffs.  Concerning "the risk that the denial of relief will produce injustice in other cases," here as in *Clark*, "This factor weighs in favor of vacating the judgment when so doing would encourage a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Id.* at 20.  Concerning "the risk of undermining the public's confidence in the judicial process," here as in *Shell Oil*, the rulings causing an "appearance of impropriety" were consistently in favor of the side of

---

[8] Target Corporation has a market cap well in excess of $100 billion.

[9] For example, a career law clerk at the Court is a close family friend (and godmother to my daughter), which has required her recusal on several of our cases assigned to her judge.  Also, Judge Battaglia joined me and others in sponsoring the San Diego Italian-American Bar Association, and Judge Lopez served with me on the Board of the Federal Bar Association.

the case from which the conflict and financial interest occurred. *See Shell Oil*, 672 F.3d at 1294 (noting a "final judgment in excess of $86 million in favor of the Oil Companies").

## Conclusion

For each of the foregoing reasons, Plaintiffs respectfully request that this Court should vacate Judge Sammartino's dismissal order (*see* ECF No. 228) and other substantive rulings (including but not limited to ECF Nos. 127 at 10, 146, 240, 248, 257, 262 and 269), and return this action to its status as of June 12, 2018, when the Court set a "schedule of pretrial dates and deadlines." *See* ECF No. 197. At a minimum, before any final decision on the appropriate remedy following recusal, Plaintiffs request appropriate disclosure and discovery of the circumstances surrounding the financial interest conflict, in order to faithfully assess the key issues justifying the requested relief.

Respectfully submitted,

Dated: October 28, 2021    **SML AVVOCATI P.C.**

By:   /s/ Stephen M. Lobbin
      Attorneys for Intervenor-Plaintiff

## PROOF OF SERVICE

I hereby certify that on October 28, 2021, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

Dated:  October 28, 2021          /s/ Stephen M. Lobbin