# EXHIBIT B

10/28/21, 2:23 PM
Case 3:15-cv-01411-TWR-BLM   Document 379-3   Filed 10/29/21   PageID.7359   Page 2 of 19
Federal judges say they 'mistakenly' broke law in these cases. Yeah, right.

THE REIDOUT BLOG

# Federal judges say they 'mistakenly' broke the law in these cases. Yeah, right.

More than 130 federal judges failed to recuse themselves from lawsuits in which they had a financial conflict of interest, according to a new report.



Sept. 29, 2021, 7:45 AM PDT / Updated Sept. 29, 2021, 7:52 AM PDT

**By Ja'han Jones**

A report Tuesday in The Wall Street Journal found rampant lawlessness among the federal judiciary, with more than 130 judges hearing cases in which they had a financial interest.

The report examined 685 lawsuits in which federal judges had a financial stake in the outcome yet failed to recuse themselves, and the fallout could mean hundreds of cases being overruled. Taken together, the Journal's findings show the federal court has become a deeply corporatist entity.

# Evidently, being an unscrupulous federal judge is a well-paying gig if you can get it!

The incestuous relationship between the federal bench and large corporations has been decried by progressive activists for years, but the Journal piece puts a finer point on things: Americans are being had by the judiciary.

Evidently, being an unscrupulous federal judge is a well-paying gig if you can get it! And since judges serve lifetime appointments, these judges can use the courts to siphon cash to their accounts at will. And they have.

According to the report:

> *Alerted to the violations by the Journal, 56 of the judges have directed court clerks to notify parties in 329 lawsuits that they should have recused themselves. That means new judges might be assigned, potentially upending rulings. ... When judges participated in such cases, about two-thirds of their rulings on motions that were contested came down in favor of their or their family's financial interests.*

The Journal found judges appointed by both Democratic and Republican presidents – from Lyndon Johnson to Donald Trump – engaged in unethical self-dealing. Federal law since 1974 requires judges to be knowledgeable about their financial interests and the interests of their spouses or children. The judges cited in the report didn't make the proper disclosures, and they often netted thousands of dollars as a result of ruling favorably for large corporations in which they owned stock.

And when they were caught, these judges had the weakest excuses imaginable. Here's one:

"I dropped the ball," said Judge Lewis Babcock of the U.S. District Court of Colorado when asked about his recusal violation. He blamed flawed internal procedures. "Thank you for helping me stay on my toes the way I'm supposed to."

The judge in question owned thousands of dollars in Comcast stock and overruled a lawsuit against the company. (Comcast is the parent company of NBC News.)



Anjali Nair / MSNBC; Getty Images

And another:

"I had no idea that I had an interest in any of these companies in what was a most modest retirement account" managed by a broker.

The judge who gave the Journal that quote – Timothy Batten Sr. of the U.S. District Court for the Northern District of Georgia – owned stock in JPMorgan Chase and reportedly ruled favorably for the bank in several court cases.

## Recommended



THE REIDOUT BLOG
The NFL's cowardly cover-up doesn't 'protect' women. It shields team owners.



THE REIDOUT BLOG
On extremism, the Department of Justice is facing a crisis of confidence

Case 3:15-cv-01411-TWR-BLM   Document 279-3   Filed 10/28/21   PageID.7362   Page 5 of 19

Another judge, Benjamin Settle of the U.S. District Court for the Western District of Washington, said he "mistakenly omitted" some of his holdings on his recusal list when he inherited a case involving Amgen Inc. in 2007.

Settle sold as much as $15,000 of his Amgen stock during the case in 2008, while the suit was under seal, according to the Journal.

With 138 violations, Judge Rodney Gilstrap, chief of the U.S. District Court for the Eastern District of Texas, had the largest number of conflicts in the Journal's analysis. U.S. District Judge Janis Sammartino of the Southern District of California had the second-most recusal violations, with 54. And U.S. District Judge Brian Martinotti for the District of New Jersey ranked third, handling 44 cases involving companies in which he had invested.

**Head over to *The ReidOut Blog* for more.**

**Related:**

[Obamas break ground on presidential library – finally](#)

[Just another reason to delete Facebook and Instagram for good](#)

[Yes, the media is suffering from 'missing white woman syndrome'](#)

---

 **Ja'han Jones** 

Ja'han Jones is The ReidOut Blog writer. He's a futurist and multimedia producer focused on culture and politics. His previous projects include "Black Hair Defined" and the "Black Obituary Project."

---

## Sponsored Stories

by Taboola

ADIUM TALK
nking the Largest College Football Stadiums

MILYMINDED
e Richest Family in Every U.S. State




Subscribe(https://www.businessinsider.com/subscription/prime?utm_source=markets)

Search markets


U.S. MARKETS OPEN IN 6 HOURS 1 MINUTES (/PREMARKET)

| DOW (/FUTURES/DOW-FUTURES) | S&P (/FUTURES/S&P-500-FUTURES) | NASDAQ (/FUTURES/NASDAQ-100-FUTURES) |
|---|---|---|
| +0.12% | +0.13% | +0.13% |

# Politicians and Fed officials aren't the only ones trading in stocks with conflicts of interest - judges do it too, and a new report shows 131 of them did so illegally

Shalini Nagarajan (/author/shalini-nagarajan)

Oct. 2, 2021, 07:00 AM



Getty Images/naruecha jenthaisong

- **131 federal judges breached US law by failing to recuse themselves from lawsuits in which they held a financial interest, WSJ found.**
- **61 judges or their families didn't just hold stocks in companies they were**

overseeing in court, they also traded them during cases.

- "I had no idea that I had an interest in any of these companies in what was a most modest retirement account," one judge said.
- Sign up here for our daily newsletter, 10 Things Before the Opening Bell (https://newsletter.businessinsider.com/join/4np/10-things-opening-bell? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest? utm_source=markets&utm_medium=ingest?

**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**
**utm_source=markets&utm_medium=ingest?**

utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest?
utm_source=markets&utm_medium=ingest).

The investing world has been rife with conflict recently. Two prominent Federal Reserve officials got **embroiled in controversial stock-trading (https://markets.businessinsider.com/news/stocks/fed-eric-rosengren-stock-trading-kaplan-health-jerome-powell-federal-reserve-2021-09? utm_source=markets&utm_medium=ingest)**, while House Speaker Nancy Pelosi has become popular as the "**Queen of Stonks (https://markets.businessinsider.com/news/stocks/nancy-pelosi-stock-trades-meme-investing-litquidity-paul-pelosi-alphabet-2021-9? utm_source=markets&utm_medium=ingest)**", thanks to her own trades, and also those of her husband.

10/28/21, 2:28 AM Politicians and Federal officials broke the law by trading in stocks, according to Federal Judges do it too at a new level sh...

Case 8:15-CV-04411-TWR-BJM Document 27a-2 Filed 10/28/21 PageID 7367 Page 10 of 19

Pelosi made a few stock
purchases that could be a
**conflict of interest
(https://finance.yahoo.com/news/nancy-
pelosi-recent-stock-purchase-
173817407.html)** as part of her
job, while Fed presidents Eric
Rosengren and Robert Kaplan
recently said they **would resign
(https://markets.businessinsider.com/news/stocks/fed-
eric-rosengren-stock-trading-
kaplan-health-jerome-powell-
federal-reserve-2021-09?
utm_source=markets&utm_medium=ingest)**
over controversially trading
stocks while in office.

Adding to the issue, more than
130 federal judges violated US
law by hearing cases that
involved companies in which
they, or their families, held
shares, according to an
**investigation by the Wall
Street Journal
(https://www.businessinsider.com/reviews/out?
u=https%3A%2F%2Fwww.wsj.com%2Farticles%2F131-
federal-judges-broke-the-law-
by-hearing-cases-where-they-
had-a-financial-interest-
11632834421%3Fmod%3Dhp_lead_pos5?
utm_source=markets&utm_medium=ingest)**.

The Journal reviewed financial
disclosures by about 700 federal
judges, filed each year from 2010
through 2018, who revealed
holdings in large-cap individual
stocks, and compared them
against tens of thousands of
court cases.

Judges questioned by the WSJ said they were either unaware of their violations, or mistakenly believe they weren't required to recuse themselves from the cases.

### 'I am mortified'

Judge Timothy Batten, appointed by former President George Bush, heard 11 lawsuits related to **JPMorgan (https://markets.businessinsider.com/stocks/jpm-stock? utm_source=markets&utm_medium=ingest)** in 2010 and 2011, even though he owned shares in the bank. Most of those lawsuits led to outcomes in the bank's favor, WSJ found.

"I am mortified," Judge Batten told WSJ by phone when he was alerted about the violations, which took place before he joined the Codes of Conduct committee in 2019. "I had no idea that I had an interest in any of these companies in what was a most

modest retirement account" that was managed by a broker, he said, adding that he regretted being involved in a conflict of interest.

Batten said he stopped investing in individual stocks in 2021 and moved into mutual funds, which do not require recusal.

Judge Janis Sammartino of California, also an appointee of Bush, traded in stocks including **Bank of America (https://markets.businessinsider.com/stocks/bac-stock? utm_source=markets&utm_medium=ingest)**, **Deutsche Bank (https://markets.businessinsider.com/stocks/db-stock? utm_source=markets&utm_medium=ingest)**, **HSBC (https://markets.businessinsider.com/stocks/hsbc-stock? utm_source=markets&utm_medium=ingest)**, **JPMorgan (https://markets.businessinsider.com/stocks/jpm-stock? utm_source=markets&utm_medium=ingest)**, and **Wells Fargo (https://markets.businessinsider.com/stocks/wfc-stock? utm_source=markets&utm_medium=ingest)** while hearing 18 lawsuits that involved one or more of those companies. Overall, she heard 54 cases that involved a conflict of interest.

Sammartino's spokesperson told
WSJ that she didn't see how there
could be a conflict as her stocks
are held in a managed account.

## What the Administrative
## Office of the US Court said

"The Wall Street Journal's report
on instances where conflicts
inadvertently were not identified
before a case was resolved or
transferred is troubling, and the
Administrative Office is carefully
reviewing the matter."

## Key findings:

1. Judges appointed by almost
every president from Lyndon
Johnson's term to Donald
Trump's failed to withdraw
themselves from 685 cases across
the US since 2010.

2. About 66% of federal judges
revealed their holdings in
individual stocks, and one in five
of those heard at least one case
that involved those stocks.

3. After being notified of their violations, 56 judges instructed court clerks to alert parties involved in 329 lawsuits that they should have been recused. This indicates new judges may be assigned to the lawsuits, which could affect rulings.

4. During their participation in such cases, about 66% of the rulings were made in favor of personal financial interest.

5. 129 federal district judges and two federal appellate judges had at least one case in which a stock they had vested interest was a plaintiff or a defendant.

6. 61 judges or their families didn't just hold stocks in companies that were plaintiffs or defendants in their courts, they also traded them during those cases.

7. Although stock value doesn't matter under the law, stockholdings amounted to more than $15,000 in 173 cases and $50,000 in 21 cases.

8. The violations break a core principle of US law that was first laid out by Congress in 1792: No one should be a judge on his or her own case.



Sponsored Video by: aramco ✕

How do you recycle CO2 to make stronger concrete?

Find out more

▷ 00:01          00:30 ◁✕

Video by Dianomi



*Democracy Dies in Darkness*

# Opinion: Don't worry, judges aren't all unethical. But some aren't very smart.

By Charles Lane

Editorial writer and columnist

October 5, 2021 at 5:01 p.m. EDT

As if the federal government didn't have enough legitimacy issues, an investigation by the Wall Street Journal has found that, between 2010 and 2018, 131 federal judges oversaw a total of 685 matters involving companies in which they or their family owned stock.

This violates a 1974 law requiring judges to recuse from cases in which they or their immediate families might appear to have a financial stake. The fallout, so far, has included shamefaced admissions and apologies from judges; a promise of improvement from the Administrative Office of the U.S. Courts, which called the situation "troubling"; and demands for do-overs from losing litigants.

What's perhaps most disappointing about this episode, however, is not what it shows about the judges' ethics; it's what it reveals about their smarts.

Why were they holding or, in a few cases, trading individual stocks in the first place? For most investors, market timing and picking winners, though possibly exciting, are losing propositions.

The wisest long-term strategy is to put your money in a broad-based mutual fund, preferably one that tracks a market index such as the S&P 500.

As no less a market maven than Warren Buffett has counseled, such an approach enables the investor to minimize trading fees, diversify holdings and grow wealth steadily — if unspectacularly — as the U.S. economy expands.

If you had put $10,000 into an S&P 500 index fund in 1991 and held on, reinvesting dividends, through 2020, you'd have more than $210,000, according to the investment site Motley Fool. Buffett, 91, has instructed the trustee in charge of his estate to invest 90 percent of it in an index fund after he dies.

Drawn from the legal elite, district judges are financially successful, by and large, with most of those surveyed by the Wall Street Journal disclosing assets above $775,000. Still, a good question for even the richest non-recusing judge would be: What makes you think you know more about investing than Warren Buffett?

To make their conduct even less comprehensible, following Buffett would also have kept the judges in the clear ethically.

NEWSLETTER  WEEKDAYS

Start your day with The 7  Sign Up →

✕

In fairness, judges who failed to recuse often did so inadvertently. The errors, in part, were sometimes due to their reliance on software that is supposed to alert them to potential conflicts of interest, by cross-referencing their stock holdings with corporate names on the court's docket. The system proved less than perfect: Occasionally, it did not recognize subsidiaries of a company whose stock the judge owned.

And while the Journal certainly uncovered many appearances of impropriety, it is not clear how much *actual* wrongdoing this connotes.

Failure to recuse in 685 cases over nine years is — given the law's clarity — 685 too many, of course. Yet this was an infinitesimal number in comparison with the overall federal caseload. There were more than *half a million* private civil lawsuits pending in U.S. district courts as of March 31, according to the Federal Judicial Center.

Furthermore, the 131 errant judges in the Journal's story represented a decided minority of the 700 the paper vetted. Just four of the 131 — Rodney Gilstrap of Texas, Janis Sammartino of California, Brian Martinotti of New Jersey and R. Brooke Jackson of Colorado — accounted for 272 combined of the 685 failures to recuse, or 40 percent.

The Journal identified an even smaller number of cases —145 — in which the judges who failed to recuse actually ruled on contested motions involving a company in which they held stock. Most of the time — 94 instances — they did indeed rule in favor of "their" firm.

Again, this was a bad look the judges should have avoided, but not substantively corrupt unless they knowingly acted in their self-interest. The Journal provided little evidence that their rulings were clearly contrary to law.

The big picture, then, is reassuring, regarding the federal judiciary's integrity: Unlawful failures to recuse due to apparent financial conflicts are rare in the district courts. The existing law is working, though it probably could be toughened by allowing immediate online access to the judges' financial disclosure forms.

Less reassuring is the knowledge that so many judges try to play the market instead of parking their money in mutual funds, which is the optimal choice in terms of both their legal obligations and their financial self-interest. It's basically a no-brainer, but these powerful individuals blew it. That is a bit of a scandal.

---

**POPULAR OPINIONS ARTICLES**                       **HAND CURATED**



A parent's perspective on the 'troubled
teen industry'

Opinion • October 26, 2021



A revealing Joe Manchin quote helps
explain why we're in deep trouble

Opinion • October 26, 2021

Why is Anthony Fauci trying to kill my
puppy?

Opinion • October 25, 2021

**NEWSLETTER** WEEKDAYS                                                    ✕

Start your day with The 7   **Sign Up** →

Free Newsletter Sign Up

Benefits & Executive Comp

# Judge Won't Say if Colleague's Stock Connection Tainted Case

By Jacklyn Wille

Oct. 8, 2021, 8:17 AM

- Judge discovered tie to MetLife after ruling in its favor

- Colleague recuses himself from further proceedings

A California federal judge tasked with deciding whether a colleague's connections to MetLife disqualified her from ruling in a case against the insurer opted to recuse himself from making the call, citing the close friendships among the court's judges.

Judges on the U.S. District Court for the Southern District of California meet regularly and socialize together with their spouses, including during an annual beach party, Senior Judge Barry Ted Moskowitz said Thursday. These social ties mean Moskowitz can't rule on whether a colleague was credible when she denied knowing of her connection to MetLife when she issued a ruling favoring the insurer, he said.

The dispute began in August, when the court clerk for the Southern District of California notified MetLife and Brian Driscoll of a conflict that may have affected their litigation over Driscoll's claim for disability benefits. Judge Janis L. Sammartino, who ruled for MetLife on all counts in November 2020, belatedly discovered that a family member owned MetLife stock, a situation that required recusal under judicial conduct rules, according to the clerk's notice.

Driscoll, who represented himself without an attorney, responded by saying the development "raises serious suspicion and denigrates the confidence in the impartiality of the judicial system." Sammartino formally recused herself the day after Driscoll's letter was filed. Two weeks later, MetLife—represented by Hinshaw & Culbertson LLP—argued that recusal was unnecessary and that its courtroom victory could stand.

The case was reassigned to Moskowitz, who considered Sammartino's disclosure and the parties' responses. Moskowitz opted to bow out of the case entirely, explaining that the close, social relationship among the court's judges meant he couldn't rule on whether Sammartino was credible when she denied knowing of the stock holding at the time she ruled in the case.

"The judges on our court are close and we maintain a friendship with each other," Moskowitz said. "We meet on most Mondays to discuss court business. We socialize at least once a year with our spouses. Indeed, most of the district judges and spouses were together for a dinner about six weeks ago celebrating this judge's assumption of senior status."

The relationship among judges and their spouses "is sufficiently close that a reasonable person would question whether the undersigned judge could impartially determine Judge Sammartino's credibility or determine what discovery to order in as much as that would implicate her privacy," he said.

In September, the Wall Street Journal reported that more than 130 federal judges have improperly overseen cases involving companies in which they or a family member owned stock.

The case is Driscoll v. MetLife Ins., 2021 BL 385017, S.D. Cal., No. 3:15-cv-01162, 10/7/21.

To contact the reporter on this story: Jacklyn Wille in Washington at jwille@bloomberglaw.com

To contact the editors responsible for this story: Rob Tricchinelli at rtricchinelli@bloomberglaw.com; Nicholas Datlowe at ndatlowe@bloomberglaw.com

---

📎 **Documents**

**Docket**
Southern District of California Docket

**Decision**
Recusal Decision

**Decision**
2020 Decision

---

## Law Firms

Hinshaw & Culbertson

## Topics

disability insurance
discovery
judicial ethics

© 2021 The Bureau of National Affairs, Inc.   All Rights Reserved