Stephen M. Lobbin (SBN 181195)
sml@smlavvocati.com
**SML AVVOCATI P.C.**
888 Prospect Street, Suite 200
San Diego, California 92037
Tel:    949.636.1391

Attorneys for Intervenor-Plaintiff

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **The Eclipse Group LLP**, a California limited-liability partnership,<br><br>                          Plaintiff,<br><br>    v.<br><br>**Target Corporation**, a Minnesota corporation, et al.,<br><br>                          Defendants. | Case No. 3:15-cv-01411-TWR-BLM<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE DISMISSAL AND SUBSEQUENT RULINGS FOLLOWING RECUSAL**<br><br>Date:  March 2, 2022<br>Time:  1:30 p.m.<br>Ctrm:  3A<br><br>Honorable Todd W. Robinson |

   None of Target's opposition arguments undermines the strong showing that, as former Chief Judge Moskowitz explained in *Driscoll*: "The judge's rulings will [] be invalidated" where the financial interest requiring recusal is one that (a) "reasonable persons would conclude the judge was aware of, whatever [her] pretense of ignorance,"[1] and (b) "*appears* to have had the *potential* of affecting the judge's rulings."

---

[1] Target argues that "Judge Sammartino was not aware of the family member's stock holding while the case was pending," but even if that was true, it is not the standard.  As Judge Moskowitz explained, the standard is **whether "reasonable persons would conclude the judge was aware** of [the financial conflict of interest],

1

As such, this Court should grant the Motion.[2]

## Each Of Target's Opposition Arguments Lacks Merit

First, Target asserts this action is a "relatively small low six-figure dollar value case." Not so, as this case is for *quantum meruit* (**not** unpaid invoices) for Plaintiffs' successful defense of Target in multiple cases, which the only expert has valued at as much as $20 million as against Target alone. *See* ECF No. 157-3 at

---

whatever [her] pretense of ignorance." As Judge Moskowitz also explained, a perfunctory denial of knowledge is insufficient. *See Driscoll v. Metlife Insurance*, No. 3:15-cv-01162-BTM-LL (S.D. Cal. Oct. 8, 2021) ("The right course . . . is to proceed on a case by case basis, determining the existence of disqualifying knowledge at the time the judge sat, ***in the way that a state of mind is normally determined, from inspection of all the circumstances***. . . . If the circumstances are such that a reasonable person would conclude that the judge had not forgotten but continued to know, ***his rulings must be vacated***. . . . [W]here the financial interest is substantial ***or appears to have had the potential of affecting the judge's rulings***, the interest will be one that reasonable persons would conclude the judge was aware of, whatever his pretense of ignorance. ***The judge's rulings will then be invalidated***.") (emphasis added). Target cites *Davis v. Xerox* as an example of "the evidence support[ing] the conclusion that [the judge] was not aware of his own disqualifying financial interests at the time he was presiding over the case." But as *Driscoll* makes clear, the standard is not subjective, it is objective—that is, ***whether "reasonable persons would conclude the judge was aware*** of, whatever [her] pretense of ignorance."

[2] Target's improper campaign to defame Intervenor Lobbin knows no bounds, apparently. Target asserts that "Lobbin tried to obscure [a supposed] late filing by backdating the letter to September 2, 2021 . . . [when it] was not filed or served until September 10, as reflected on the ECF docket." If Target and its counsel actually had researched the issue before including false personal attacks, this Court's Clerk could have informed Target of its receipt of the letter (in person) on September 2, 2021. *See* Ex. A (herewith). In a further defamatory charge, Target asserts "an effort at further delay" because this Motion is set for a March 2022 hearing. As simple due diligence would have revealed, this Court (not a moving party) sets the hearing date via a pre-filing telephone call. This Court should make note, at a minimum, of Target counsel's inexcusable unprofessionalism. *See* CivLR 2.1.a.3.A ("Professionalism: Code of Conduct") ("We expect lawyers to address legal arguments with other lawyers professionally, and not personally.").

8.[3]  Second, Target argues that the 6+ year (potentially) financial conflict of interest could not have affected Judge Sammartino's rulings.  But any truly objective analysis reveals that she tried as hard as she could to undermine Plaintiffs' case, even (a) issuing a tentative ruling granting summary judgment against Plaintiffs (before realizing it was insupportable), (b) construing the parties' settlement agreement in strange contradiction to black-letter law,[4] (c) awarding crippling attorney fees against Intervenor on a very fairly-contested contract interpretation issue (*see* ECF No. 269), and even (d) approving sanctions on a simple deposition scheduling issue (*see* ECF Nos. 127 and 146).

---

[3] Target continues to promote a "false narrative" that "Eclipse and Lobbin, in short, sought a total of $487,637.78 in legal fees from Target and Kmart, of which, based on the invoiced amounts alleged, Target was allegedly responsible for approximately 70% and Kmart for approximately 30%."  None of this is actually true—and has never been true—since this *quantum meruit* action was filed in 2015.

[4] As Judge Kleinfeld reasoned in dissent on the appeal, the contract interpretation was neither subtle nor complex (as Judge Sammartino strained to conclude):

> Under California law, "[w]here all the parties who unite in a promise receive some benefit from the consideration, whether past or present, their promise is presumed to be joint and several."  Cal. Civ. Code § 1659.  And "[a] promise, made in the singular number, but executed by several persons, is presumed to be joint and several."  Cal. Civ. Code § 1660.
>
> The parties signed the settlement agreement against the background of these statutes, so ***the starting point for interpreting this contract is a presumption of joint and several liability***.
>
> ***The terms of the contract do not rebut the presumption***.

*The Eclipse Grp. v. Target Corp.*, No. 20-55206, at *6 (9th Cir. Aug. 20, 2021) (Kleinfeld, J., dissenting) (emphasis added).

Third, Target argues—without support—that Plaintiffs' appeal negates any possible prejudice, but of course the appeal was from post-judgment contempt motions, not from the merits of the underlying action.[5] Obviously, had Judge Sammartino timely disclosed her financial conflict of interest long before any settlement, there would have been a recusal and a non-conflicted judge ruling on summary judgment issues and presiding over a trial on the merits. Moreover, an appeal (particularly for appellant) is hard to win. Just because the Ninth Circuit affirmed Judge Sammartino's misinterpretation of the parties' Settlement Agreement—over a much stronger dissenting opinion—does not mean the error of the untimely recusal was "harmless."

Finally, throughout its opposition, Target repeats the interesting contention that because it is such a rich corporation, no favorable decision by even a conflicted judge could ever affect its market value. But this is exactly the point of the Supreme Court's test from *Liljeberg*—specifically, the need to examine the "appearance of impropriety," the "risk that the denial of relief will produce injustice in other cases," and particularly, the "risk of undermining the public's confidence in the judicial process." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988). As Plaintiffs explained in the Motion, the risk here is particularly momentus **because of** the size of Target, and the widespread perception of favoritism bestowed upon big (particularly American) corporations.

---

[5] Target suggests—without authority—that the proper course would have been to "raise[] this issue with the Ninth Circuit when they sought rehearing of their appeal," but there would have been no basis (or ability) to do so. The rehearing petition in the appeal was due **before** the response to the financial conflict disclosure from the Clerk of this Court, which required a response **to the Clerk**, not the Ninth Circuit. *See* ECF No. 271-272. Moreover, a rehearing petition is limited to the issues appealed, not including new issues. *See Duffie v. Gotcher (In re Duffie)*, No. 17-36010, at *4 (9th Cir. Apr. 16, 2020) (only grounds for rehearing are (a) overlooked fact or law, (b) overlooked change in law, or (c) apparent conflict with another decision of the Court not addressed in the opinion).

The literature supporting this chronic perception is replete. Just a few weeks ago, the Supreme Court itself acknowledged specifically this particular crisis, gave it special attention, and professed that "the Judiciary takes this matter seriously." Ex. B at 3 (2021 Year-End Report on the Federal Judiciary) ("We expect judges to adhere to the highest standards, and those judges violated an ethics rule."); *id.* ("[F]or those judges [like Judge Sammartino] who had multiple violations, or professed ignorance of the ethics rule, there is a more serious problem . . . ."); *id.* ("We are duty-bound to strive for 100% compliance because ***public trust is essential, not incidental, to our function***.") (emphasis added). The press also is giving this issue appropriately critical attention. *See* Ex. C ("Justice Roberts Minimizes U.S. Supreme Court's Legitimacy Crisis"); Ex. D at 1 ("We have a judiciary for various reasons ***already losing the trust of the American people***, and the evidence that federal judges are hearing cases that they have a direct financial interest in only makes things worse.") (emphasis added); *id.* at 3 ("The much bigger problem . . . is the composition of the federal judiciary, which now tends to have a very strong ***pro-business background and orientation***.") (emphasis added); Ex. E at 3 ("The problem isn't the *result* of the cases or whether it benefitted a judge. Rather, ***the problem is the existence of the conflicts themselves***. Hundreds of judges presided over cases in which they had a direct financial interest, and in doing so they violated both the law and ***basic principles of fairness and equality under the law***.") (emphasis added); *see also* Ex. F.

It is clear that, given the current situation of a legitimate crisis in the American public's confidence in the fundamental fairness of the federal judiciary, and given the potential egregiousness of the missed financial conflict in this case, much more of a blunt remedy is justified here, precisely as requested by Plaintiffs.

**<u>Target Ignores This Court's Precedent And All Other Cases On Point</u>**

Target fails to address Judge Moskowitz' extensive reasoning on point in *Driscoll*, and merely attempts to distinguish the case because it "did not involve a subsequent Ninth Circuit appeal." The appeal here is irrelevant, of course, to the requested relief which involves the undisclosed financial conflict of interest of the District Judge during the 6+ years (before any need for an appeal) when this case was pending at the trial court. Target similarly ignores the rest of the key cases Plaintiffs cited and discussed in the Motion. *See State of Washington*, 98 F.3d at 1164 ("Rule 60(b) authorizes setting aside a judgment [] for reasons that would have prevented entry of the judgment in the first place, ***had the reasons been known at the time judgment was entered***.") (emphasis added); *Clark v. Kapila*, 612 B.R. 808, 820 (S.D. Fla. 2019) (missed mandatory disqualification required setting aside the district court's judgment and returning the case "to the summary judgment phase for further proceedings"); *Liljeberg*, 486 U.S. at 847 (affirming decision to vacate judgment under Rule 60(b) in the interests of justice due to judge's failure to recuse himself in violation of 28 U.S.C. § 455); *Preston v. U.S.*, 923 F.2d 731, 735 (9th Cir. 1991) ("There is no way [] to purge the perception of partiality in this case other than to vacate the judgment and remand the case to the district court for retrial by a different judge."); *Demodulation, Inc. v. United States*, 114 Fed. Cl. 655, 657 (2014) ("[T]he safest course is to vacate Judge Braden's substantive orders because 'justice must satisfy the appearance of justice.'") (quoting *Liljeberg*, 486 U.S. at 864, 108 S. Ct. 2194); *Shell Oil Co. v. United States*, 672 F.3d 1283, 1288-94 (Fed. Cir. 2012) (subsequent rulings vacated where "the judge should have should have recused himself as of May 15, 2009 and should have taken no further action").

## Conclusion

For each of the foregoing reasons, Plaintiffs respectfully request that this Court should return this action to its status as of June 12, 2018, when the Court set a "schedule of pretrial dates and deadlines." *See* ECF No. 197. At a minimum, before any final decision on the appropriate remedy following recusal, Plaintiffs request appropriate disclosure and discovery of the circumstances surrounding the financial interest conflict, in order to faithfully assess the key issues justifying the requested relief.

Respectfully submitted,

Dated:  February 23, 2022        **SML AVVOCATI P.C.**

By:   /s/ Stephen M. Lobbin
        Attorneys for Intervenor-Plaintiff

# PROOF OF SERVICE

I hereby certify that on February 23, 2022, I electronically transmitted the foregoing document using the CM/ECF system for filing, which will transmit the document electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies have been served on those indicated as non-registered participants.

Dated: February 23, 2022            /s/ Stephen M. Lobbin