# EXHIBIT C

 REUTERS®

Commentary   **Justice Matters by Hassan Kanu**

January 5, 2022 · 2:51 PM PST
Last Updated 2 months ago



⟨   **Supreme Court of the United States**   Appellate   Securities Enforcement   Public Policy   Litig⟩   ⟩

# Justice Roberts minimizes U.S. Supreme Court's legitimacy crisis

By Hassan Kanu                                                                                   6 minute read

                    





Supreme Court Chief Justice John Roberts arrives to attend President Joe Biden's first address to a joint session of the U.S. Congress in Washington, U.S., April 28, 2021. REUTERS/Jonathan Ernst/Pool

(Reuters) - After a particularly tumultuous year for the U.S. Supreme Court, Chief Justice John Roberts' annual report on Friday seemed tone deaf to the noise.

Both the executive and legislative branches considered major court reforms to the court in 2021, partly in response to a Wall Street Journal investigation that found 131 federal judges improperly failed to disqualify themselves from cases involving companies in which they owned stock. Still-pending legislation that would impose more stringent public financial reporting requirements on federal judges even seems to have garnered **bipartisan** support. And public approval of the Supreme Court also dropped to **new lows** among Republicans, Democrats and independents alike.

Of course, liberals remain enraged that Senate Republicans in 2016 cited an upcoming presidential election as grounds to block consideration of a Democratic Supreme Court nominee – before going on to confirm the third of Republican President Donald Trump's nominees just days before the 2020 election.

Register now for FREE unlimited access to Reuters.com

Register

The negative public sentiment may have been exacerbated by the court's rulings since: a Reuters **analysis** last July found that the newly constituted court has been increasingly relying on the "**shadow docket**" to issue decisions that "repeatedly favored" Trump's administration. Adding to the court's public relations problem are the final months of 2021, when it **re-entered** the fray of the U.S. culture wars over abortion and voting rights.

Roberts' 2021 Year-End Report on the Federal Judiciary seemed largely inured to the discord.

The **report** amounts to a terse dismissal of the very notion that court administration could be improved by an act of Congress, or really anyone who isn't a judge themselves. Furthermore, the chief justice omitted any mention of the veritable litany of attacks the court currently faces, and instead advanced a skewed vision of judicial i_____ to public office.



My View    Following    Saved

The Supreme Court's media relations office didn't respond to my questions about Roberts' report.

Alicia Bannon, managing director of the judiciary and fair courts program at the Brennan Center for Justice, said the report took on a "troubling tenor" at times.

"The tone was 'don't worry, we judges have this handled,'" Bannon said. "I don't think that's how the court should be interacting with the public or Congress, especially at a time of real crisis in confidence in the courts."

The report addressed three issues Roberts said "will receive focused attention" in coming months: the findings about judges financial conflicts; sexual and other harassment in the judiciary; and one particular judge who has raised concerns about "judge shopping" by publicly advertising his courtroom as the best place to file patent infringement lawsuits.

Roberts treated the findings about financial non-disclosures as minor, maybe even acceptable, lapses. The 685 instances "amount to a very small fraction" of the 2.5 million cases filed during the period, he wrote.

But that contradicts the apparent seriousness with which the public and Congress regarded the investigation – as indicated by the subsequent 422-4 **House vote** for the Courthouse Ethics and Transparency Act. (A companion Senate bill is awaiting votes). The bill would set a 45-day window for judges to report stock trades of more than $1,000 and would require the judiciary to post disclosure forms online.

But the Wall Street Journal's findings may be just the **tip of the iceberg**. "These are the kinds of reports that raise questions beyond the contours of the exact, initial findings," Bannon said. "I think what was uncovered was a pretty substantial judicial administrative failure."

Roberts' diagnosis – that judges "who had multiple violations, or professed ignorance of the ethics rule" must have had "inadequate ethics training" – also seems way off. It beggars belief to assert that someone could successfully complete college, law school, the bar exam, judicial training and ascend to a federal judgeship without ever grasping that most basic and general principle of ethics – avoiding conflicts of interest.

Roberts addressed the judiciary's sexual harassment scandal very briefly, without even using the words "sexual" or "harassment." A working group Roberts **established in 2017** to address allegations of "misconduct" found that the p[...]e recommendations to improve reporting and training, he explain[...]

My View     Following     Saved

The cursory statement seems inadequate to address a serious and continuing problem. In August 2021, for example, the former secretary of the Judicial Conference – the policymaking body overseen by Roberts – joined roughly 20 other federal employees supporting a lawsuit alleging widespread gender, race and sexual orientation discrimination in the judiciary, the Washington Post reported that month.

The final matter Roberts addressed concerned Judge Alan Albright, a 2018 Trump appointee to the District Court for the Western District of Texas.

Albright now hears more than 20% of patent cases nationwide, mostly brought by "patent trolls," and largely because of his public outreach to that community, according to a November **law review article** by J. Jonas Anderson, professor and associate dean at American University Washington College of Law, and Paul Gugliuzza, a professor at the Temple University Beasley School of Law.

Roberts eluded the crux of the problem on this end, too, characterizing the issue as an "arcane but important" matter regarding rules for assigning judges to cases.

But that obscures that Albright has been quite openly bending the rules and ignoring binding case law, according to Anderson, Gugliuzza and a bipartisan pair of **Senators who wrote Roberts** in November to complain that Albright is misusing his power.

I reached out to Albright for comment about the study. He did not respond.

Rather than addressing the apparent violations, Roberts said the case is a "good example" that shows "that self-governing bodies of judges from the front lines" are best-positioned to suggest changes to court rules. But it was the press, academics and the legislature that brought concerns about Albright to light – not any body of judges.

Roberts' statement also contained glaring omissions, including his failure to address widespread accusations of political bias tied to the **shadow docket**, which have prompted several justices to make **unusual** **public statements** defending their impartiality.

Roberts' report consistently minimized the scope of the judiciary's problems, all while insisting that only judges have real insight on the subjects.

"There is a role for Congress that also allows appropriate respect for judicial independence," Bannon said. "Judges aren't supposed to be untouchable philosopher-kings. They're public servants, and public trust can't exist without

My View     Following     Saved

Opinions expressed here are those of the author. Reuters News, under the Trust Principles, is committed to integrity, independence and freedom from bias.

Register now for FREE unlimited access to Reuters.com

**Register**

Our Standards: **The Thomson Reuters Trust Principles.**

Opinions expressed are those of the author. They do not reflect the views of Reuters News, which, under the Trust Principles, is committed to integrity, independence, and freedom from bias.

**Hassan Kanu**

Hassan Kanu writes about access to justice, race, and equality under law. Kanu, who was born in Sierra Leone and grew up in Silver Spring, Maryland, worked in public interest law after graduating from Duke University School of Law. After that, he spent five years reporting on mostly employment law. He lives in Washington, D.C. Reach Kanu at hassan.kanu@thomsonreuters.com

 

## More from Reuters



'I cannot imagine' pain of Arbery's mother - Garland on verdict

Arbery's killers guilty on all hate-crimes charges

Biden sanctions Russia for 'invasion of Ukraine'

U.S. trucker convoy heads to protest in D.C.

National Guard train as nursing assistants

00:00                                                                 01:37

My View        Following        Saved