# EXHIBIT E

COMMENTARY & ANALYSIS

**January 13, 2022**

# Justice Roberts gets it wrong: federal judges' conflicts of interest threaten the entire judiciary

By Gabe Lezra



This fall, a sweeping *Wall Street Journal* investigation found that at least 131 federal judges violated the law by hearing cases in which they had a financial interest in one of the parties. What's more, 61 judges actively traded shares in a party to an ongoing case.

                                                                                 menu

Case 3:15-cv-01411-TWR-BLM   Document 280-5   Filed 02/23/22   PageID.7443   Page 3 of 5

foundational principle of equal justice, dating back to the Justinian Code. There is no due process, no rule of law, no justice without it. It's hard to overstate the magnitude of this ethical crisis.

Chief Justice of the United States John Roberts appears to disagree. In his yearly report on the federal judiciary, the Chief Justice took pains to address—and then downplay—the significance of the crisis. As Roberts would have us see it, the problem boils down to "a small number," of judges who "did not take sufficient note" of their ethics training. In general, he says, these were "isolated violations" that were the result of "unintentional oversights," and he takes pains to note that the 685 specific cases uncovered by the *Journal* amount to "three hundredths of one percent" of the civil cases heard. Critically, and most egregiously, he ends this exercise in reframing and obfuscating by asserting that, "for all the conflicts identified, the *Journal* did not report that any affected the judge's consideration of a case or that the judge's actions in any of those cases … actually financially benefited the judge."

There are multiple problems with the picture the Chief Justice is painting. First, the numbers he cites—the total cases heard by conflicted judges—aren't particularly useful in understanding the scope of the problem. The total number of known conflicted cases is less important than the sheer number of judges who violated the law by hearing a conflicted case. The number of judges—131— is staggering because there are only 870 total federal judges at any given time. Even with some attrition during the period of the study, the percentage of judges who have failed to live up to their ethical obligations is far larger than "three hundredths of one percent."

# "Roberts, who by all accounts is acutely aware of the judiciary's public perception, is apparently unwilling to see these conflicts for what they are: a crisis of institutional legitimacy."

The issue here is not simply that Roberts is cherry-picking numbers to suit his argument—he's a lawyer, after all. Rather, it's that he's arguing this point at all. Roberts, who by all accounts is acutely aware of the judiciary's public perception, is apparently unwilling to see these conflicts for what they are: a crisis of institutional legitimacy. The federal judiciary is tasked with upholding and executing fundamental principles of justice in our country, and granted the extraordinary privilege of lifetime tenure. Not only does a conflicted judiciary violate a litigant's constitutional

Case 3:15-cv-01411-TWR-BLM Document 280-5 Filed 02/23/22 PageID.7444 Page 4 of 5

right to due process, it undermines the public's belief in the rule of law in general. The judiciary is built on a foundation of public trust: it doesn't have the power of the purse or the authority to enforce the laws that it interprets. Credibility is its currency. If that falls away then the entire institution crumbles.

This is precisely why Roberts' statement that the *Journal* didn't prove that the conflicts actually resulted in a benefit to the judges is so troubling. The problem isn't the *result* of the cases or whether it benefitted a judge. Rather, the problem is the existence of the conflicts themselves. Hundreds of judges presided over cases in which they had a direct financial interest, and in doing so they violated both the law and basic principles of fairness and equality under the law. As Rep. Hank Johnson (D-GA), chairman of the House Judiciary Committee's Subcommittee on the Courts, Intellectual Property, and the Internet said during a recent hearing, "it is in the appearance of impartiality that Americans find faith in their courts and trust in their democracy. … The damage has been done. Federal judges did not follow the law. … The appearance of impropriety has already tainted their judgments." Public confidence that the system of law is fair and just is critical to maintaining democratic governance, and these judges undermined that confidence.

Congress needs to take real steps to respond to this emergency, and cannot just settle for a judicial *mea culpa* and a promise by the Judicial Conference to improve the conflicts checking software. While we support the bipartisan Courthouse Ethics and Transparency Act which improves elements of the judiciary's conflicts reporting process, the scope of this crisis demands a fundamental re-thinking of the judiciary's ethics responsibilities. This was, as Rep. Jerry Nadler (D-NY), chairman of the House Judiciary Committee said, "a massive failure, not just of individual judges, but of the entire system that is ostensibly in place to prevent this unlawful conduct."

Congress can and must act to restore the judiciary's integrity and prevent anything like this from happening again. In addition to passing Rep. Johnson's much-needed legislation creating a code of ethics for the Supreme Court, Congress, as CREW explained in written testimony submitted to the House Judiciary Committee, can create a simple, enforceable, and comprehensive judicial conflicts of interest regime with two small policy changes.

**First, Congress should enact a blanket prohibition on federal judges owning or trading any individual stocks, bonds, or similar financial instruments.** This isn't about forcing judges to take a vow of poverty—there are many ways to invest money that don't come with the risk of creating conflicts, like mutual or index funds. Rather, this is about designing an effective legal regime to prevent conflicts of interest that undermine confidence in our democracy. Rep. Nadler put it best in his remarks during the recent hearing: because it has proven impossible to enforce the law governing recusal requirements, "requiring judges to put everything into mutual or index funds" would be "a superior route" because it would be "self-enforcing."

**Second, Congress should apply the federal criminal conflict of interest statute, 18 U.S.C. § 208, to the judiciary.** Currently, Section 208 only applies to employees of the executive branch,

Case 3:15-cv-01411-TWR-BLM Document 280-5 Filed 02/23/22 PageID.7445 Page 5 of 5

and serves as the stick behind federal ethics rules. Applying this criminal law to the judiciary would add teeth to the existing requirements, providing a mechanism to hold judges accountable for egregious violations of their ethical duties. The result of these changes would essentially be to "bind [federal judges] to substantially the same rules as the other two branches," as Rep. Darrell Issa (R-CA) put it.

Federal judges are granted lifetime tenure, an immense privilege that carries with it a responsibility to uphold our laws. Because that role often requires federal judges to eschew public opinion, political pressure and other outside influences, the Constitution was drafted to provide a high bar for removing them short of their retirement or death. That constitutional protection makes it even more important that federal judges adhere to the highest standards of ethical conduct. A substantial number of federal judges have failed to live up to the ethical standards our system demands of them, and the Chief Justice appears unwilling to address the crisis of legitimacy that failure has created. The other two branches must now act to restore legitimacy and protect our democracy.



 

© Citizens for Responsibility and Ethics in Washington 2020–2022

CFC 42218