# EXHIBIT F



A   Wall Street Journal investigation found that federal judges around the nation have violated U.S. law and judicial ethics by overseeing 965 court cases involving companies in which they or their family owned stock.



Case 3:15-cv-01411-TWR-BLM   Document 280-6   Filed 02/23/22   PageID.7448   Page 3 of 6



© Sam Greene/The Cincinnati Enquirer/Associated Press
Dozens of Federal Judges Had Financial Conflicts: What You Need to Know

As a result of the Journal's reporting, judges in 796 cases have notified courts that they presided in the lawsuits improperly and that the cases are eligible to be reopened.



Cost To Replace Smoke Alarm - Get Quotes in Minutes
Ad   www.smokedetectorinstallquotes.com

In the most expansive investigation of judicial stockholdings in the U.S., the Journal in September 2021 revealed that 131 federal judges improperly heard 685 court cases between 2010 and 2018 in which they or their family members owned shares of companies that were plaintiffs or defendants in the litigation. Two of the judges sat on appellate courts; the other 129 were district judges, also called trial judges. Since its initial review, which examined civil cases, the Journal found additional judges and more violations.

About two-thirds of federal district judges disclosed holdings of individual stocks, and nearly one of every five of those who did improperly heard at least one case involving a company in which they or their families owned a stake.

Nothing bars judges from owning stocks, but a 1974 federal law prohibits any "ownership of a legal or equitable interest, however small," in a party to a case before a judge. That law and the Judicial Conference of the U.S., the federal courts' policy-making body, require judges to avoid even the appearance of a conflict.

The ban on holding even a single share of a company while presiding in a case involving the firm means judges must be vigilant about their assets, including informing themselves about stockholdings of spouses and minor children.

The Judicial Conference requires courts to use conflict-checking computer software to help identify cases where judges should bow out. Judges needn't disqualify themselves from cases involving banks where they have mortgages or checking or savings accounts, nor do they need to recuse because of any mutual-fund holdings.

The Journal found judges failing to disqualify themselves as required in every region of the country. They included judges appointed

💬 410

2/23/22, 2:38 PM
Dozens of Federal Judges Had Financial Conflicts: What You Need to Know
Case 3:15-cv-01411-TWR-BLM   Document 289-6   Filed 02/23/22   PageID.7440   Page 4 of 6

When there were contested motions in cases involving companies the judges had a financial stake in, two out of three of their rulings on the motions were in favor of those companies.

Dozens of judges or their families not only owned shares in companies in their courtrooms but reported that they or their brokers traded the shares while the judges were presiding in the cases.

Legal experts said the activity the Journal found amounts to a pervasive disregard for the judicial conflict-of-interest laws. Indiana University Law Professor Charles Geyh said that, in isolation, a violation could be viewed as an oversight. But the Journal's overall findings raise "a more systemic problem of judges chronically neglecting their duty to disqualify in such cases."

The Journal reviewed hundreds of financial disclosure forms filed annually from 2010 to 2018 with the Administrative Office of the U.S. Courts. The forms, filed by federal trial and appellate judges, aren't online. The Journal used the courts' data as obtained and digitized by the Free Law Project, a nonpartisan legal-research nonprofit.

Then the Journal compared judges' stockholdings to tens of thousands of court dockets, finding 685 violations. Scholars who reviewed the Journal's analysis said its methodology was sound. The Journal later gained access to some 2019 financial disclosures, and identified more than 250 additional judicial violations, including in some older cases. The rest of the 2019 forms are expected to be released early next year.

The Free Law Project has posted its database of more than 250,000 pages of judges' financial disclosures drawn from over 26,000 electronic files. The group requested the files from the federal judiciary beginning in 2017 and has been gathering them since then.

**Video: Supreme Court agrees to hear challenge to affirmative action (CNBC)**



Judges offered a variety of explanations for the violations. Some blamed court clerks. Some said their lists of companies to avoid had misspellings that foiled the conflict-screening software. Some said they had only nominal roles in the cases, such as confirming settlements, though there is no legal exemption for such roles.

Some judges misunderstood the law, saying erroneously that they didn't have to recuse themselves because their stock was held in accounts run by professional money managers.

One judge who had 36 recusal violations, after initially saying he "never really paid much attention" to his stockholdings and wasn't familiar with the ethics law, told the Journal: "I am embarrassed that I did not properly understand and apply the stock ownership rule."

💬 410

© 2022 Microsoft    Privacy & Cookies    Terms of use    Advertise

💬 Feedback

Some judges since have sold shares in family accounts. After the Journal contacted U.S. District Judge Liam O'Grady about a financial conflict involving an Amazon.com Inc. case he had been hearing for 20 months, his wife's investment adviser in December sold the Amazon shares. One of the defendants in the case has asked that a new judge be appointed to rehear the case.

The Administrative Office of the U.S. Courts in October warned judges in a memo they are required to keep informed about their finances and maintain timely lists of parties that are off limits. Judge Roslynn Mauskopf, director of the office, wrote that judges may not rely on accounts managed by financial advisers to avoid their recusal obligations. "Up-to-date recusal lists are the most effective tool for conflict screening," she wrote.

Some district courts have gone further to urge judges to be more vigilant. In a Dec. 21 memo, the U.S. District Courts of the Ninth Circuit, in California, wrote that "in light of the importance of conflict screening, I am writing to urge you to compare, as expeditiously as possible, your 2019 and 2020 financial disclosure reports against all cases that were assigned to you during the periods covered by these reports." A similar memo and a best-practices tipsheet were sent out in November to judges in the Fifth Circuit.

After being alerted to violations by the Journal, 137 judges have directed court clerks as of Jan. 24, 2022 to notify parties in 796 lawsuits that they should have disqualified themselves and that cases could be reassigned and reopened.

In one instance, Rodney Gilstrap, one of America's most prominent federal judges, acknowledged in court notices that he may have violated the law in 138 lawsuits identified by the Journal between 2011 and 2018 by hearing cases that involved companies in which he or his wife had a financial interest.

A new judge was assigned to an asbestos case in South Carolina in December after the widow of a deceased veteran objected to the previous judge's ownership of investments in some of the defendant companies. In two other recusal violations, the appearance of a conflict for the judges has become enmeshed with arguments on appeal in circuit courts in New York and California.

In another case, in an Alabama federal court, a judge ruled against two homeowners in a foreclosure case against Wells Fargo & Co. The judge had bought Wells Fargo stock about two weeks after receiving the case. "This is outrageous," one of the homeowners said when told the judge held the bank shares. "How am I supposed to know she owns stock in Wells Fargo?"

The homeowners asked the court to reopen the case. The court has assigned a new judge to their suit. The court clerk said the judge's stockholding didn't affect her decisions in the case.

In direct response to the Journal articles, the House held a hearing and in December passed a bill to streamline and expedite public access to judges' financial-disclosure forms, which now are infrequently made public. Senate sponsors of a similar bill are seeking to pass it in 2022, a congressional aide said. Judiciary Committee members have introduced several other bills to modernize the judiciary's ethics, disclosure and transparency rules, which could be swept into omnibus legislation.

The Senate Judiciary Committee in December passed a bill to ease access to the federal courts electronic records system and to make it free to most users. Existing "fees may be too expensive for individuals, small businesses, small law firms, and nonprofits to track litigation that impacts them," the committee's chairman, Sen. Dick Durbin (D., Ill.), said.

The federal judiciary has been fighting back on the legislation, but lawmakers in both parties are steadfast in pushing it through.

"The need for change is glaring," said Rep. Hank Johnson, a Georgia Democrat who heads the House Judiciary Committee's courts subcommittee, "especially when you get the kinds of reports that The Wall Street Journal led where you see that the law is being abused by members of the judicial branch, not just by a few, but dozens after dozens of federal district court judges."

In an October letter to Chief Justice John Roberts, who heads the judiciary, Sen. Elizabeth Warren (D., Mass.) and Rep. Pramila Jayapal (D., Wash.) asked for information related to the Journal's "Hidden Interests" series. They said they were proposing legislation that would impose civil sanctions for recusal violations and a ban on judges "owning individual stocks, radically reducing the likelihood of conflicts of interest without the need for recusal proceedings."

Citing the Journal coverage, Chief Justice Roberts pledged in December to improve the federal judiciary's ethics training and compliance. "Let me be crystal clear: the Judiciary takes this matter seriously. We expect judges to adhere to the highest standards, and those judges violated an ethics rule," the chief justice said in his year-end report.

If a judge notifies a court clerk of a recusal violation, parties have the option to ask the court to rehear the case with a different judge.

If you have a pending case involving a company, you can ask your lawyer to contact the Administrative Office of the U.S. Courts for the latest financial disclosure forms of the judge to determine whether he or she has any conflicts or violations. But disclosures are filed only a

410

© 2022 Microsoft       Privacy & Cookies       Terms of use       Advertise       Feedback

2/23/22, 2:58 PM                    Dozens of Federal Judges had Financial Conflicts. What You Need to Know.

Case 3:15-cv-01411-TWR-BLM   Document 280-6   Filed 02/23/22   PageID.7451   Page 6 of 6

If anyone requests to see judges' financial disclosures, the judges are told who asked. Some lawyers say this creates a disincentive for them to ask, out of concern about annoying judges in whose courtrooms they frequently appear.

Write to Michael Siconolfi at michael.siconolfi@wsj.com, Coulter Jones at Coulter.Jones@wsj.com, Joe Palazzolo at joe.palazzolo@wsj.com and James V. Grimaldi at james.grimaldi@wsj.com

## Topics for you



## MORE FOR YOU

